**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39294**

| | | |
|---|---|---|
| AMBER ROSE MARKWOOD, | ) | |
| | ) | **2012 Opinion No. 20** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: April 17, 2012** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| JOSHUA ROBERT MARKWOOD, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John R. Stegner, District Judge; Hon. John Judge, Magistrate.

Order modifying child custody, <u>affirmed</u>.

Thomas J. Clark, Lewiston, for appellant.

Linda L. Blackwelder Pall, Moscow, for respondent.

LANSING, Judge

Joshua Robert Markwood appeals from the district court's affirmance of a post-divorce custody order which allowed his ex-wife, Amber Markwood, to retain primary physical custody of their children after she moved from Moscow, Idaho to The Dalles, Oregon.

**I.**

**BACKGROUND**

Joshua and Amber were divorced on September 25, 2009, after approximately six years of marriage. During the marriage, they had two daughters who were born in 2004 and 2005. The parties were awarded joint legal and physical custody of the children according to an agreed parenting plan that was attached to and incorporated into the divorce decree. Under the parenting plan, which was structured around the children's school schedule, the children were to reside with Amber during the week in Moscow, Idaho, and with Joshua on the weekends in Clarkston, Washington, which is about a forty-five-minute drive from Moscow.

1

At some point, Joshua began residing with his girlfriend in Clarkston, and Amber became engaged to marry a man[1] who resided in The Dalles, Oregon, which is a four to five-hour drive from Clarkston. In 2010, Amber took the children with her to The Dalles and resided there for a few months. She apparently attempted to adhere to the terms of the custody agreement by transporting the children to Clarkston to stay with Joshua and his girlfriend on the weekends. Joshua and Amber attempted to negotiate new arrangements for physical custody of the children with Amber residing in The Dalles, but they failed to reach an agreement. Joshua then filed a motion to modify the custody arrangement and Amber presented a counterproposal for modification. Joshua sought primary physical custody, and Amber sought to maintain primary physical custody after relocating to The Dalles. While awaiting trial, Amber apparently returned to Moscow temporarily to allow the children to attend the fall semester of school in accord with the existing parenting plan.

After a trial, the magistrate court ordered that Amber would retain primary physical custody while living in The Dalles. In consideration of the increased travel time necessary to transport the children between the parents' places of residence, the magistrate also reduced the frequency of the children's stays with Joshua, but increased their duration. Joshua appealed the magistrate court's decision to the district court, which affirmed.

Joshua now appeals to this Court. He asserts that the magistrate court misperceived the issue at trial, abused its discretion by allowing Amber to relocate to The Dalles, and abused its discretion by allowing her to retain primary physical custody after that relocation.

## II.

## ANALYSIS

### A.    Standard of Review

Child custody determinations are committed to the sound discretion of the magistrate. *Danti v. Danti*, 146 Idaho 929, 934, 204 P.3d 1140, 1145 (2009); *Bartosz v. Jones*, 146 Idaho 449, 453, 197 P.3d 310, 314 (2008). Therefore, a magistrate's custody decision may be overturned on appeal only if it is an abuse of discretion. *Roberts v. Roberts*, 138 Idaho 401, 403, 64 P.3d 327, 329 (2003). A custody award will not be regarded as an abuse of discretion so long

---

[1]    During the pendency of these proceedings Amber Markwood remarried, and she apparently has changed her last name.

as the trial court: (1) recognized the issue as one of discretion; (2) acted within the outer limits of its discretion and consistently with the legal standards applicable to the available choices; and (3) reached its decision through an exercise of reason. *Id.*

**B.    The Magistrate Correctly Perceived the Issue at the Trial**

Joshua asserts that the magistrate erred by viewing the salient issue to be whether it would be in the children's best interests to live with Amber in The Dalles or with Joshua in Clarkston. Instead, he contends, the magistrate court should have "weigh[ed] whether or not the mother's relocation was in the best interests of the children against the mother remaining in Idaho." That is, he contends that the correct choice for the magistrate court was whether Amber should be allowed to move to The Dalles or should be ordered to continue to reside in Moscow with the children despite her desire to marry a man who lived in The Dalles. Joshua's argument appears to be based on an assumption that the magistrate court could have required Amber to reside in Moscow because it was in the children's best interests for their parents to live in close proximity.

Joshua's argument misperceives Idaho law and the scope of a magistrate court's authority in child custody litigation. In *Allbright v. Allbright*, 147 Idaho 752, 215 P.3d 472 (2009), the Idaho Supreme Court made it very clear that in custody cases, an Idaho court may not dictate where a parent will live. Rather, the court may only issue orders for the custody and care of children in view of the location or relocation of the parents' places of residence. In *Allbright*, a magistrate court had ordered that a divorced mother not move out of state, even if she did not take the minor child who was the subject of a custody dispute, because the court found that the mother's move would be adverse to the best interests of the child. On appeal, the Supreme Court defined the issue presented as "whether the magistrate court had authority to order that Mother live within a specific geographical location so that both parents could continue having frequent contact with and physical custody of their child." *Id.* at 754, 215 P.3d at 474. The Supreme Court held that the magistrate court possessed no such authority and consequently reversed the magistrate court's order. The Court explained:

> A court's authority in a divorce action is not conterminous with what the court determines to be the best interests of the child. Idaho Code § 32-717(1) provides, "In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children." The statute authorizes the court to give direction for the custody, care, and education of the

3

child. It does not authorize a court to decide the geographic area in which the parent or parents of the child shall live.

 . . . .

[The court] can determine with which parent the child will reside, but it cannot determine where either parent will reside.

 . . . .

 A court presiding over a child custody matter does not become a family czar with unlimited authority to order the parents to do anything that the court believes is in the best interests of the child. . . .

 There is no doubt that it would be in the best interests of [the child] for her parents to live in close enough proximity that they can both have frequent and continuing contact with and physical custody of her. "Idaho favors the active participation of both parents in raising children after divorce, which policy is reflected in I.C. § 32–717B supporting joint custody." *Roberts v. Roberts*, 138 Idaho 401, 405, 64 P.3d 327, 331 (2003). However, the magistrate court had no authority to order Mother to reside in any particular geographical location.

*Allbright*, 147 Idaho at 754-56, 215 P.3d at 474-76.[2]

Although Joshua cites the *Allbright* decision in his appellate brief, his argument ignores its holding. The magistrate court here had no authority to order Amber to continue to reside in Moscow, even if that would have been in the children's best interests. The magistrate court correctly recognized the limitations of its authority when it stated:

 The ideal situation . . . was maybe [Amber] staying in Moscow. [The children] were very well-adjusted here. They love Moscow. They love their friends here. That's not the case that I get to decide. I have a very different case. That's not--that's not the case I--that's not the choice I get to make.

The magistrate court correctly perceived that it did not have the authority to compel Amber to remain in Moscow and that the issue it must decide was whether it was in the best interests of the children to live primarily with Amber in The Dalles, or with Joshua in Clarkston. Joshua has shown no error in this regard.

---

[2] In *Roberts*, 138 Idaho at 405, 64 P.3d at 331, the Idaho Supreme Court said that "in Idaho, the moving parent has the burden of proving relocation would be in the best interests of the child before moving in violation of a previous custody arrangement." In *Allbright*, however, the Court clarified: "The 'relocation' at issue in *Roberts* was not the relocation of the parent. It was the relocation of the children. . . . Thus, *Roberts* is not authority for the proposition that the court in a divorce action has the authority to determine the geographic area in which either or both parents will reside." *Allbright*, 147 Idaho at 755, 215 P.3d at 475.

**C.** **The Magistrate's Decision to Award Primary Residential Custody to Amber Was Not an Abuse of Discretion**

Joshua next asserts that the magistrate court erred by allowing Amber to retain primary physical custody of the children, both because the magistrate overemphasized the need to promote continuity and stability in the lives of the children and because the magistrate's custody order was not supported by substantial and competent evidence.

Idaho Code § 32-717(1) provides that a "court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children." Thus, the children's best interests are of paramount importance when making decisions regarding the children's custody, including decisions relating to where the children will reside. *Danti*, 146 Idaho at 934-35, 204 P.3d at 1145-46; *Roberts*, 138 Idaho at 404-05, 64 P.3d at 330-31. In determining the children's best interests, courts are required to consider all relevant factors. *Roberts*, 138 Idaho at 404-05, 64 P.3d at 330-31. Idaho Code § 32-717(1)(a)-(g) identifies some of those factors which may be relevant as including the parents' wishes for the children's custody; the children's wishes; the interrelationship and interaction between the children and their parents and siblings; the extent the children have adjusted to their school, home, and community; the character and circumstances of the persons involved; the need to promote continuity and stability in the children's lives; and domestic violence. Additional factors not enumerated in Section 32-717 may be especially relevant when deciding whether to permit a child's relocation, but there is no preapproved "laundry list of factors that [can] or should be considered" in a relocation case. *Bartosz*, 146 Idaho at 456, 197 P.3d at 317. *See also Roberts*, 138 Idaho at 405, 64 P.3d at 331. Instead, parties are free to suggest, and "trial courts are free to consider factors unique to each case." *Bartosz*, 146 Idaho at 456, 197 P.3d at 317.

In most cases it is presumed that an award of joint custody serves a child's best interests, I.C. § 32-717B(1), (4) and (5), but that presumption is not equivalent to a presumption against a custodial parent relocating with a child. *Bartosz*, 146 Idaho at 456, 197 P.3d at 317. The relocating parent has the burden of proving that it would be in the child's best interests to allow relocation of the child rather than to award primary physical custody to the other parent. *Allbright*, 147 Idaho at 755, 215 P.3d at 475; *Danti*, 146 Idaho at 935, 204 P.3d at 1146; *Roberts*, 138 Idaho at 405, 64 P.3d at 331.

5

## 1. The magistrate did not overemphasize any factor

It is an abuse of discretion for the trial court to overemphasize any one factor when considering the best interests of a child. *Schultz v. Schultz*, 145 Idaho 859, 863, 187 P.3d 1234, 1238 (2008); *Moye v. Moye*, 102 Idaho 170, 172, 627 P.2d 799, 801 (1981). All of the relevant factors impacting the custody decision should be considered and reflected in the record. *Schultz*, 145 Idaho at 863, 187 P.3d at 1238. In *Schultz*, the Idaho Supreme Court held that the trial court abused its discretion when "the only factor the court considered was the distance between the father and child created when [the mother] moved to Oregon" with the child. *Id.* at 865, 187 P.3d at 1240. Most notably, the trial court "failed to consider [the mother's] wishes for [the child], the extensive history of domestic abuse between the parents and in the presence of [the child], the fact that [the father] made no attempts to visit his daughter [while she was in Oregon], or the stability and community support offered to [the child] in Oregon." *Id.* Similarly, in *Moye*, the Idaho Supreme Court held the trial court abused its discretion when "all . . . relevant factors [other than the mother's physical condition] impacting upon the best interests of the children were not duly considered or, if they were, it was not so reflected upon the record." *Moye*, 102 Idaho at 172, 627 P.2d at 801.

In stark contrast to *Schultz* and *Moye*, the magistrate in this case clearly considered all the Section 32-717 factors as well as additional factors specific to relocation cases. Several of the Section 32-717 factors played only a slight role in the magistrate's analysis, but were nevertheless dutifully discussed on the record. Specifically, the magistrate considered the wishes of the parents and of the children, but the children apparently did not express a desire to live with one parent in preference to the other. The magistrate considered the interaction and relationship between the children and parents, finding that both girls were very bonded to the parents, and loved both parents, and that "both parents relate to the children in very positive ways."[3] Because the magistrate did not "have any concerns with interactions or interrelationships," this factor had little effect in the magistrate's analysis of which parent should be awarded primary physical custody. The extent to which the children had adjusted to their school, home, and community

---

[3]     The children do not have any other full siblings. The magistrate did consider the relationship between the children and the daughter of Joshua's girlfriend, finding that the relationship was important, and should continue. The magistrate also indicated that it believed both Joshua's girlfriend and Amber's fiancé were stable and positive influences on the children.

was discussed only tangentially, presumably because the magistrate correctly recognized that regardless of whether the primary physical custodian would be Amber in The Dalles or Joshua in Clarkston, the children would be transferred out of the school they had attended in Moscow, and there would be disruption of their ties with their former school, home, and community. The magistrate also found that domestic violence was "not a significant factor" in this case.

The magistrate discussed the remaining Section 32-717 factors at length, supporting all findings and conclusions with numerous references to the evidence presented during the trial. While the magistrate determined that both parents were generally positive influences, and that both could provide a good home for the children, the magistrate concluded that Amber "has been the *most* consistent and stable parent." (Emphasis added.) The magistrate noted, for example, that Joshua was dilatory in his attendance of a court-mandated parenting class and the magistrate saw cause for concern in two incidents in which Joshua acted on his anger by becoming somewhat violent and breaking items, including smashing Amber's glasses and breaking a DVD player that was a gift to the children from Amber. The magistrate found that Amber did not display the same kind of "extreme reactive behavior." In sum, the magistrate determined that while both parents were capable, Amber "has provided more consistent primary care to the children."

An important factor in the magistrate's analysis was its concern for continuity and stability in the children's lives. The magistrate first considered the work schedules of the parties. Amber obtained work as a nurse in The Dalles, where she would be scheduled to work from 7:30 a.m. to 3 p.m., allowing her to be home during most of the children's after-school hours. In comparison, the magistrate noted that Joshua's work history "has been somewhat sporadic in terms of his ability to spend . . . time with the children." He had often worked long hours during the weekends, which was his only time to spend with the children, so they had been left largely in the care of Joshua's girlfriend. At the time of trial, Joshua had a choice of working hours. He could work twelve-hour shifts Friday through Sunday, either from 5 a.m. to 5 p.m., or from 5 p.m. to 5 a.m.; or he could work from 4 p.m. to 2:30 a.m. Monday through Thursday. Any of these choices would have substantially limited his ability to care for and spend time with the children on work days. The magistrate recognized that primary residence with Joshua would offer the stability and continuity of a familiar residence in a familiar community, but that continued primary custody with Amber provided the stability of continuity with the same

7

primary caregiver. The magistrate court ultimately held that the stability factor tilted in favor of relocation with Amber.

After considering all the Section 32-717 factors, the court also discussed additional factors specific to relocation cases, including Amber's motivation for the move, the extent to which the move would enhance the economic, emotional, and educational well-being of Amber and the children, and the likelihood that suitable visitation arrangements could preserve the child's relationship with the noncustodial parent. The court found that the possibility of economic, emotional, and educational enhancements "really favor the move" and that visitation arrangements could preserve the children's relationship with Joshua by providing that the children would stay with Joshua less frequently but for longer durations.

The magistrate court thus considered a multitude of factors and did not overemphasize any single factor to the exclusion of all others as occurred in *Schultz*, nor did it emphasize any factor as a means of minimizing the importance of other factors that weighed against the ultimate decision, as occurred in *Moye*. Joshua's argument that the magistrate overemphasized a single factor is clearly disproven by the record.

Joshua also asks this Court to adopt an "overarching rule" that "relocation must be weighed against the status quo of the preexisting order" because, he argues, a child's primary custodial parent would otherwise always be allowed to relocate with the child. We find no merit in this contention. Under Joshua's proposed rule, relocation of children with a relocating parent would be disfavored because it disrupts the status quo, even when maintaining the status quo is not an option, as is the case here. It would be irrational and pointless for the court to weigh relocation against an alternative that does not exist. The "overarching rule" established by Idaho law is that a court making a custody determination is to be guided by the best interests of the child. As part of this determination, courts are able to consider all consequences of the proposed relocation of a child, including the effect it will have on the child's ability to interact with the non-custodial parent, extended family, and friends. *See* I.C. § 32-717(1); *Bartosz*, 146 Idaho at 456, 197 P.3d at 317; *Roberts*, 138 Idaho at 405, 64 P.3d at 331.

### 2. The magistrate's decision was supported by substantial and competent evidence

A trial court abuses its discretion when it makes a custody award based upon evidence that is insufficient to allow a conclusion that the award is in the child's best interests. *Danti* 146 Idaho at 934, 204 P.3d at 1145 (2009). A magistrate's findings of fact will be upheld, however,

if they are supported by substantial and competent evidence and are not clearly erroneous. *Reed v. Reed*, 137 Idaho 53, 56, 44 P.3d 1108, 1111 (2002). Evidence is substantial "if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven." *King v. King*, 137 Idaho 438, 442, 50 P.3d 453, 457 (2002). An appellate court will view the evidence in favor of the trial court's judgment and, if substantial supporting evidence exists, will uphold the trial court's findings of fact notwithstanding the existence of conflicting evidence. *Schneider v. Schneider*, 151 Idaho 415, 420, 258 P.3d 350, 355 (2011). An appellate court will not make credibility determinations or replace the trial court's factual findings by reweighing the evidence. *Id.*

As discussed in detail above, the record demonstrates that the magistrate's analysis of the Section 32-717 factors and other relevant factors was supported by evidence presented at trial, including evidence regarding the children's relationships with Joshua, Amber, and others; Joshua and Amber's parenting skills and past care of the children; Joshua and Amber's work schedules; Amber's work opportunities in The Dalles; and Joshua's past violent outbursts. Joshua's argument that the evidence could have supported a contrary decision--to grant primary custody to him instead of to Amber--does not state a basis for this Court to overturn the magistrate's decision. Under our well-established standard of review we will not reweigh the evidence nor second-guess the trial court's credibility determinations.

The magistrate court recognized the issue as one of discretion, considered relevant factors in compliance with Idaho law, and conducted a thorough and well-reasoned analysis that is amply supported by the trial evidence. No abuse of discretion has been shown.

**D.      Attorney Fees**

Amber requests an award of attorney fees pursuant to Idaho Code § 12-121, under which fees may be granted when the Court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably and without foundation. *Nelson v. Nelson*, 144 Idaho 710, 718, 170 P.3d 375, 383 (2007); *Balderson v. Balderson*, 127 Idaho 48, 54, 896 P.2d 956, 962 (1995). *See also* I.R.C.P. 54(e)(1). Although Joshua has not been successful in this appeal, we do not find that the appeal was entirely frivolous. Therefore, we decline to grant attorney fees to Amber.

9

## III.

## CONCLUSION

The appellate decision of the district court affirming the magistrate court's order modifying child custody is affirmed. Costs on appeal to respondent.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**