# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 39178

RUSSELL PETERSON, )
)      **Boise, June 2012 Term**
  **Plaintiff-Appellant,** )
)      **2012 Opinion No. 114**
v. )
)      **Filed:  July 17, 2012**
LAURA KNIGHT PETERSON, )
)      **Stephen W. Kenyon, Clerk**
  **Defendant-Respondent.** )
)

_____

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Jefferson County.  Hon. Robert L. Crowley, Jr., Magistrate Judge.

Decision determining custody and visitation, affirmed.

Swafford Law Office, Chtd., Idaho Falls, for appellant.  Trevor L. Castleton argued.

Dunn Law Office, Rigby, for respondent.  Amelia A. Sheets argued.

_____

BURDICK, Chief Justice

This case comes before this Court on an appeal from a magistrate court's determination on custody and visitation of minor children in a divorce proceeding.  In a memorandum decision, the magistrate court awarded the parties joint legal custody of the children, with primary physical custody awarded to the mother.  The father, Russell Peterson (Russell), alleges on appeal that the magistrate court abused its discretion by awarding unequal visitation time to the mother, Laura Peterson (Laura), and by allowing the mother to move to Utah with the children. We affirm the decision of the magistrate court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Russell and Laura Peterson were married in 1993 and have five minor children.  The children were born in 1997, 1999, 2005, and twins in 2007.  In 2001, the Petersons moved to Shelley, Idaho, eventually building a home in Rigby, Idaho in 2004.  Throughout the marriage, Laura was a stay-at-home mother while Russell, trained as a counselor and clinician, was the

1

sole wage earner. In late 2002, Laura filed for divorce on the basis of irreconcilable differences and the parties separated. In March 2003, Russell and Laura reconciled and the divorce action was dismissed.

In June 2009, Russell was arrested and charged with indecent exposure and public nuisance, both misdemeanors.[1] He pled guilty to the indecent exposure charge. Shortly after, Russell lost his part-time job at the Behavioral Health Center in Idaho Falls and resigned from his job at the Idaho Department of Health and Welfare. In August 2009, he started working full time for Mental Wellness Centers, Inc., in Idaho Falls.

On August 6, 2009, Laura informed Russell that she was taking the children to live in Utah, though she did not file for divorce. Russell filed a Complaint for Divorce the next day, August 7, 2009, alleging irreconcilable differences. Soon after, the magistrate court filed a Joint Temporary Restraining Order (JTRO), a Preliminary Injunction, and an Order to Attend Focus on Children Class. The JTRO prohibited the children from being removed from the state for more than 72 hours.

The magistrate court received evidence and entered a temporary order regarding child custody on March 26, 2010. The temporary order provided joint legal and physical custody with a schedule for visitation, and mandated that Russell vacate the family home and move to an apartment as close as possible to the family home. As part of the custody proceedings, the Petersons participated in a custody evaluation conducted by Dr. Ruby Walker (Dr. Walker). In her report, Dr. Walker concluded that Laura and Russell were both caring parents and recommended "joint legal and physical custody of the children." Dr. Walker also found that the "children have been raised with both parents actively involved in their care. To change this in any drastic manner will have a detrimental effect upon the children."

After preliminary matters, a trial was held on three non-consecutive days: March 2, 2011, March 31, 2011, and June 13, 2011. After the trial, both Russell and Laura submitted written argument to the magistrate court.

On July 28, 2011, the magistrate court entered a Memorandum Decision that awarded primary physical custody to Laura with visitation to Russell every other weekend, split holidays, and a two-week rotation during the summer. The magistrate court also held that it is in the best

---

[1] The police investigation report states that Russell attempted to engage in sexual activity with an off-duty male police officer. Russell's same-sex attraction has been a continual source of stress in the marital relationship.

interests of the children for Laura to be permitted to move to Salt Lake City, Utah, if she chooses. On August 19, 2011, the magistrate court issued a Decree of Divorce that contained similar findings. The decree awarded joint legal custody of the children with joint physical custody as apportioned in the memorandum decision.

Russell filed a Motion for Permissive Appeal on September 19, 2011. The motion was initially denied, but was subsequently granted after this Court received a statement in support of appeal from Russell. A Notice of Appeal was filed with this Court on November 18, 2011.

## II. STANDARD OF REVIEW

Child custody determinations made by a magistrate court are reviewed by this Court under an abuse of discretion standard. *Schneider v. Schneider*, 151 Idaho 415, 420, 258 P.3d 350, 355 (2011) (citing *Hoskinson v. Hoskinson*, 139 Idaho 448, 454, 80 P.3d 1049, 1055 (2003)). In its analysis, this Court asks first whether the magistrate court correctly perceived the custody issue as one of discretion; then whether the magistrate court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to the court; and finally, whether the magistrate court reached its decision by an exercise of reason. *Schultz v. Schultz*, 145 Idaho 859, 861–62, 187 P.3d 1234, 1236–37 (2008).

"An abuse of discretion occurs when the evidence is insufficient to support a magistrate's conclusion that the interests and welfare of the children would be best served by a particular custody award or modification." *Nelson v. Nelson*, 144 Idaho 710, 713, 170 P.3d 375, 378 (2007). When reviewing the magistrate court's findings of fact, this Court "will not set aside the findings on appeal unless they are clearly erroneous such that they are not based upon substantial and competent evidence." *Id*. Even if the evidence is conflicting, findings of fact based on substantial evidence will not be overturned on appeal. *Id*. (citing *State v. Hart,* 142 Idaho 721, 723, 132 P.3d 1249, 1251 (2006)).

## III. ANALYSIS

**A. The magistrate court did not abuse its discretion in awarding primary physical custody to Laura with visitation to Russell.**

Russell argues that although the magistrate court granted the parties joint legal and physical custody of the children, the parenting plan grants primary physical custody and a majority of the visitation time to Laura. Russell argues that such an arrangement is contrary to the legal presumption of joint legal custody found in Idaho case law, and contrary to Dr. Walker's recommendations. In response, Laura argues that the magistrate court reached its

3

conclusions through an extensive analysis, applying the evidence to the appropriate statutory factors and applicable case law.

In custody determinations, the best interest of the child or children is of paramount importance. *Schultz*, 145 Idaho at 862, 187 P.3d at 1237. Idaho Code section 32-717B(4) states that "there shall be a presumption that joint custody is in the best interests of a minor child or children." Joint custody is defined as "an order awarding custody of the minor child or children to both parents and providing that physical custody shall be shared by the parents in such a way as to assure the child or children of frequent and continuing contact with both parents." I.C. § 32-717B(1). An award of joint physical or legal custody is based on the court's determination of "the best interests of the minor child or children." *Id*. However, joint physical custody does not mean that each parent is entitled to receive an equal amount of time with the children:

> 'Joint physical custody' means an order awarding each of the parents significant periods of time in which a child resides with or is under the care and supervision of each of the parents or parties.

> Joint physical custody shall be shared by the parents in such a way to assure the child a frequent and continuing contact with both parents ***but does not necessarily mean the child's time with each parent should be exactly the same in length*** nor does it necessarily mean the child should be alternating back and forth over certain periods of time between each parent.

I.C. § 32-717B(2) (emphasis added). Additionally, "it is presumed that a continuing relationship with both parents is in the child's best interest." *Schultz,* 145 Idaho at 865, 187 P.3d at 1240.

1. The decision of the magistrate court.

In its Memorandum Decision, the magistrate court found that:

> It is in the best interests of the minor children of the parties that the parties be awarded the joint physical custody of the children, with primary physical custody being awarded to the defendant, subject to the right of the plaintiff to exercise secondary physical custody with the children according to such schedule as the parties shall agree.

The magistrate court also provided a custody schedule, awarding Russell time with the children during the school year: every other weekend; alternating federal holidays with Thanksgiving in even-numbered years, Christmas in odd-numbered years, and every father's day. During the summer, Russell was entitled to have the children on an alternating two-week basis.

The court found that Laura is humiliated by Russell's arrest. Further, the magistrate found that it is in the best interests of the children for Laura to be permitted to move with the children to Salt Lake City, Utah, if she chooses. The court also found that Laura's economic

4

situation would be enhanced by such a move, since she could live rent free and work for her brother. In its findings, the magistrate court found that neither party can afford to pay for and maintain the family home after the divorce, and that Laura could live rent free in Utah.

In the event that Laura moves to Utah, the magistrate ordered that exchanges of the children take place at the Burger King in Malad, Idaho. Rigby is roughly 120 miles from the Burger King in Malad.

2. <u>Whether the decision of the magistrate court is supported by substantial evidence.</u>

In reaching its conclusions, the magistrate court made findings under the non-exhaustive list of factors in I.C. § 32-717. Idaho Code section 32-717(1) states that:

> In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:
>
> (a) The wishes of the child's parent or parents as to his or her custody;
> (b) The wishes of the child as to his or her custodian;
> (c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
> (d) The child's adjustment to his or her home, school, and community;
> (e) The character and circumstances of all individuals involved;
> (f) The need to promote continuity and stability in the life of the child; and
> (g) Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

"This list of factors is not exhaustive or mandatory and courts are free to consider other factors that may be relevant." *Bartosz v. Jones*, 146 Idaho 449, 454, 197 P.3d 310, 315 (2008). Specifically, the magistrate court made findings on all of the above factors, which were supported by substantial and competent evidence, except the factor of domestic violence, which the court found inapplicable. The magistrate court also made findings related to the potential move to Utah which will be discussed in Section III, Part B.

*a. The wishes of the parents as to custody.*

In the memorandum decision, the magistrate court found that Russell wished to have legal and physical custody of the children awarded jointly. Further, the court found that Russell wished to have the children for two overnights per week and for alternating weekends. In his testimony, Russell expressed support for the fifty-fifty custody split recommended by Dr. Walker. As for Laura, the court found that she wished for joint legal and physical custody with

5

primary physical custody awarded to herself. Laura also wished to move with the children to Utah and live in her father's home.

### b. The wishes of the children and relationship with the parents.

To determine the wishes of the children, the court noted Dr. Walker's custody evaluation, which stated that the children wished to remain in their current schools in Rigby with their friends, church, and other activities. Russell testified that he has not heard the children say anything to contradict the evaluation. However, Laura testified that she heard the children, at least their oldest daughter, make statements that contradict Dr. Walker's report. Based on all of this, the magistrate court was "unclear regarding the children's current desires." Russell argues that Laura's testimony is insufficient to contradict Dr. Walker's recommendation.

On the relationship with the parents, the court found that the children get along well with each other and with both parents. The Court also found that Laura is "the primary care giver in terms of time," but that Russell has increased his time with the children since his arrest and the divorce. Russell testified that he puts the children to bed at night and has taken care of the children when Laura is gone. He stated that he has a nighttime routine with the children.

### c. The character and circumstances of all individuals involved.

The magistrate court made numerous findings as to the character and circumstances of Russell and Laura as well as the children. These findings range from the personal struggles of the parties to Laura's desire to move to Utah.

On the issue of economic well-being, Laura testified that a move to Utah would be in the children's best interests "first and foremost, because the children would still have a mother, a mother in the home . . . . I would have a job that would work around my schedule." Laura further testified that her brother offered her a job as his secretary, and that she could move in with her father. Laura believes that this arrangement would provide economic stability. Laura's brother confirmed in his testimony that Laura could do some filing and computer work on his behalf if she moved to Salt Lake City. Laura's father confirmed that Laura and the children could move into his home. Russell expressed concern about the living arrangement with Laura's father, stating that he is a fragile older man. Russell also argued that Laura did not look for educational or employment opportunities in the Rigby and Idaho Falls area. In her testimony, Laura stated that although she did not look for employment around Rigby, she looked for but did not find any ultrasound programs, which is the training she hoped to pursue.

6

*d. The need to promote continuity and stability in the life of the child.*

In addition to finding that the children are adjusted to their home, school, and community, the court found that continuity and stability are important in the lives of the children. However, the court found that the family has lived in numerous places in the past fifteen years including: South Carolina; Provo, Utah; Shelley, Idaho; and Rigby, Idaho.

        3.  <u>Whether the magistrate improperly disregarded the recommendations of the custody evaluator.</u>

Russell argues that the magistrate improperly disregarded the recommendations of the custody evaluator. As discussed above, the parties participated in a custody evaluation by Dr. Walker. In her evaluation, Dr. Walker interviewed both parents and all five children, but also relied upon outside materials such as interviews with family friends. On the relationship between the parents, Dr. Walker believed that "[b]oth parents have made accusations about the other that are of concern. However, both parents have denied continued problem areas. There is a lot of stress in the relationship at this time."

In her report, Dr. Walker concluded that both parents "love the children very much" and "have demonstrated emotional compatibility with the children." The report also stated that "[t]he children have been raised with both parents actively involved in their care. To change this in any drastic manner will have a detrimental effect upon the children."

As to relocation, the evaluation read that the children would "prefer to remain in their current schools with friends, their church, and activities in the Rigby area." Dr. Walker recommended "joint legal and physical custody of the children. Both parents have cared for the children in the past and present. . . . The children are very comfortable with both parents."

There is no statutory provision that mandates the magistrate court to follow the recommendations of the custody evaluation. To the contrary, there are several opinions from this Court that affirmed custody decisions that did not follow the recommendations of the custody evaluation. For example, in *McGriff v. McGriff*, the magistrate court substantially altered custody and visitation of the parties' daughters even though the custody evaluator recommended that the time not be altered. 140 Idaho 642, 644, 99 P.3d 111, 113 (2004). On appeal, this Court affirmed the decision of the magistrate. *Id*. at 654, 99 P.3d at 123. In *Bartosz*, the evaluator recommended that the mother be allowed to move with the child to Hawaii, but the magistrate found it in the child's best interests to stay in Idaho. 146 Idaho at 453, 197 P.3d at 314. On appeal, this Court affirmed the decision of the magistrate. *Id*. at 464, 197 P.3d at 325.

Additionally, the report does not make a specific recommendation as to the children's wishes as to the custodian. While the report states that both parents should remain actively involved, the statute calls for the court to address the children's wishes as to which parent will be the custodial parent. I.C. § 32-717(1)(c). Since the report does not identify the children's wishes for custody, the report cannot be used to show that the district court abused its discretion on this issue. Further, as will be discussed below, the report contains recommendations on the issue of relocation, but the children's preferences on relocation is not expressly part of the statutory framework in I.C. § 32-717(1). While the magistrate court is not foreclosed from using the children's relocation preferences in its decision, any information on this point found in the report cannot be used to show an abuse of discretion by the magistrate court.

Although there is conflicting evidence in the record, we hold that the findings of the magistrate court were consistent with previous holdings of this Court, were supported by substantial evidence, and not clearly erroneous.

## B. The magistrate court did not abuse its discretion in permitting Laura to move to Utah with the parties' five minor children.

Russell argues that by allowing Laura to move with the minor children to Utah the magistrate court abused its discretion, made false findings of fact, and acted against public policy as set forth by this Court. More specifically, Russell argues that the magistrate court ignored Dr. Walker's recommendation against Laura moving the children. In response, Laura argues that there is no presumption against relocation in Idaho law and that the magistrate had substantial evidence to support its findings on the best interests of the children.

This Court has previously held that Idaho law does not impose a presumption against relocation. *Bartosz*, 146 Idaho at 457, 197 P.3d at 318. "On the contrary, when considered together, [previous cases] stand for the proposition that a magistrate must consider all factors relevant to the child's best interest when making a custody determination. A parent's move is only one factor to be considered when awarding custody." *Id.* "An overemphasis on any single factor is also an abuse of discretion." *Id.* at 458, 197 P.3d at 319.

As noted above, the magistrate court held that:

> It is in the best interest of the minor children (and consistent with the policy that children have frequent continuing contact with both parents) that the defendant be permitted to move with the children to the Salt Lake City, Utah area, if she chooses.

8

In reaching this conclusion, the magistrate made several findings of fact including: Laura has family in the Salt Lake area; the children have attended church in Utah and have other acquaintances as well as cousins there; and that the parties have had previous discussions regarding a move to Utah. On the issue of finances, the court found that Laura would be on welfare should she remain in Idaho, and that a move to Utah would enhance her economic situation. Such a move would allow Laura to "essentially be a stay-at-home mother with the children, while earning income in her home, by performing secretarial services for her brother." A move to Utah would also allow Laura to pursue her stated educational pursuits in the ultrasound field.

In its decision, the magistrate court found that a move to Utah would necessarily reduce the time that the children spent with Russell if he stayed in Idaho. The magistrate further reasoned that such a move would not limit Russell's time with the children beyond any limitation caused by the divorce. In her custody evaluation, Dr. Walker concluded that Russell, as the primary provider for the family, might find it problematic to find new employment in Utah.

The record contains support for the findings of the magistrate court. Laura testified that Russell, around the time of the first divorce filing in 2009, mentioned that he would follow the family down to Utah if Laura moved the children. Russell testified that he remembers discussions with Laura regarding a move to Salt Lake City, but that he is not interested in moving there. Russell had great concern about negative effects of the children moving to Utah on his relationship with the children. Laura also testified that the children have acquaintances in Utah, and that past visits to the area would make a transition easy for the children. However, Laura also stated that moving to Salt Lake City is the only option she has considered and that she has not looked at getting a job in the Idaho Falls or Rigby area. The only evidence that Laura would be on welfare if she stayed in Idaho is a comment Laura made while testifying. Additionally, Laura did not attempt to find a job or educational opportunities near Idaho Falls or Rigby. But, as stated above there is no presumption against relocation in child custody cases. *Bartosz*, 146 Idaho at 457, 197 P.3d at 318. Although it is obvious that Laura tried to manipulate the magistrate court into a narrowed decision matrix, we hold that the magistrate court had substantial and competent evidence to support its decision to allow Laura to move with the children to Utah.

**C. Neither party is entitled to attorney fees on appeal.**

9

Russell argues that he is entitled to attorney fees on appeal pursuant to I.C. §§ 12-120 and 12-121, I.R.C.P. Rule 54, and I.A.R. 40 and 41. In response, Laura argues that she is entitled to attorney fees on appeal on the same grounds and pursuant to I.C. §§ 32-704 and 32-705.

On appeal, "argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." I.A.R. 35(a)(6) (requirements for appellant); 35(b)(6) (requirements for respondent).

Russell's entire request for attorney fees is as follows: "Russell hereby requests attorney fees on appeal pursuant to Idaho Code §§ 12-120 and 12-121; Idaho Rules of Civil Procedure, Rule 54; Idaho Appellate Rules 40 and 41; and any and all other applicable rules and statutes." In her request for attorney fees, Laura "respectfully asserts and requests she is entitled to attorney fees on appeal pursuant to Idaho Code §§ 12-120, 12-121, 32-704, and 32-705; pursuant to Appellate Rules Rule 40 and Rule 41; Idaho Rules of Civil Procedure Rule 54, as well as any and all other applicable statutes and rules."

Since neither party provided any argument or case law to support their respective requests for attorney fees, neither party is awarded fees on appeal. *See Bagley v. Thomason*, 149 Idaho 799, 805, 241 P.3d 972, 978 (2010).

## IV. CONCLUSION

We hold that the findings of the magistrate court were not clearly erroneous and that the court had substantial evidence to support its conclusions regarding visitation. Further, we hold that the magistrate court did not abuse its discretion in permitting Laura to move to Utah with the children. Neither party is entitled to attorney fees on appeal.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**