**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 41976**

EMILY E. SUTER,                    )
                                   )
    Petitioner-Appellant,          )          **Boise, July 2014 Term**
                                   )
v.                                 )          **2014 Opinion No. 120**
                                   )
JEFFREY C. BIGGERS,                )          **Filed: November 13, 2014**
                                   )
    Respondent.                    )          **Stephen W. Kenyon, Clerk**
                                   )
_____      )
                                   .

Appeal from the District Court of the Third Judicial District, State of Idaho, Gem
County.  Hon. Jayme B. Sullivan, Magistrate Judge.

Order modifying custody of children, affirmed.

Bauer & French, Boise, for appellant.  Margalit Ryan argued.

Law Offices of Jeffrey T. Sheehan, PLLC, Boise, for respondent. Constance
Norris argued.

_____

BURDICK, Chief Justice

This appeal arises from a custody dispute between Jeffrey Biggers ("Jeff") and Emily Suter ("Emily") over their two children. The trial court entered a temporary order that the boys enroll in school in Emmett, Idaho, until the conclusion of trial. After trial, the court found that it would be in the boys' best interests to remain in the Emmett area. Consistent with this finding, the court ordered that Jeff and Emily have joint physical and legal custody, that Jeff have primary custody of the boys, and that Emily have visitation rights throughout the year and over the summer break. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Emily and Jeff married in 2000. They had two children, C.B. and B.B. ("the boys"), ages twelve and eight at the time of this appeal. In 2011, Emily filed for divorce against Jeff, citing irreconcilable differences. Emily and Jeff signed a parenting plan less than a week later. That plan stated:

1

> We agree that a move by either parent of more than 100 miles from Sweet, ID will make this plan impractical or unworkable. Therefore, neither parent will make such a move with a child without our mutual written agreement or a decision by the court that it is in a child's best interest to move. We agree that a new parent plan will be made if a move occurs.

On March 29, 2011, the court entered its divorce decree, which incorporated the parenting plan. Since then, Emily remarried to Clint Suter.

In May 2012, Emily filed a motion to modify her custody agreement with Jeff to allow the boys to relocate with her to Coeur d'Alene, Idaho, well outside of the 100 miles specified in the parenting plan. After trial, a Boise County magistrate denied Emily's proposal to relocate to Coeur d'Alene. The court ordered Emily and Jeff to continue to share joint legal and physical custody with Emily as the primary physical custodian. The magistrate cited the boys' need for continuity and stability and found that it was in the boys' best interests to continue to reside in the Emmett area. In March 2013, Jeff made a motion to modify the parenting plan, alleging (1) the boys had been missing excessive amounts of school, (2) there was conflict over the visitation schedule, and (3) Emily intended to move the boys to Lewiston, Idaho. Emily answered and counterclaimed in April 2013, arguing that a modification was necessary because the parties needed a defined holiday schedule. Around this same time, venue was transferred from Boise County to Gem County. In May 2013, Jeff amended his motion to request primary physical custody, alleging Emily suddenly moved herself and the boys to McCall, Idaho.

The boys lived in the Emmett area, which is composed of the towns of Letha, Sweet, and Emmett. In summer of 2013, Emily did move the boys to McCall, approximately 77 miles from Jeff's home in Sweet. The Emmett School District denied Emily's request to enroll the boys in school while they lived in McCall, stating that "it is not reasonable to require students to commute five (5) hours per day for school." On August 21, 2013, the court entered a temporary order requiring the boys to continue attending school in the Emmett School District to maintain the status quo. In order to comply with the temporary order, Emily primarily lived with the boys in her parent's basement in Boise and transported the boys to school in Emmett daily. Between May 2013 and January 2014, the boys spent approximately seventy overnights in McCall.

Emily and her current husband, Clint, have no significant contacts in the McCall area. Emily states her family moved because (1) Clint obtained full-time work with a local ski resort and (2) the State ranked the McCall School District with an objectively better score than the Emmett School District. The boys lived in McCall with their older half-sister, their younger half-

brother, Emily, and Clint. Clint has two children from another marriage that do not live with them. While in McCall for approximately two months during the summer of 2013, the boys attended a church camp, a Boy Scout camp, a library camp, and made trips to the beach.

Jeff lives in the Emmett area and regularly visits the boys at school for weekly lunches, extracurricular activities, and to act as a parent volunteer. The boys are involved in numerous activities in the Emmett area, including school, church, rodeo, 4-H, and scouts.

At trial, a Gem County magistrate judge held that a permanent move to McCall was a "material, permanent, and significant change." Neither party appealed this finding. The judge then held that, under Idaho Code section 32-717, it would be in the best interests of the boys to remain in the Emmett area. The judge stated that the boys were raised in the area, established themselves within the community, and lived near many friends and relatives. To facilitate the boys' continued contact with the Emmett area, the court designated Jeff as the primary physical custodian of the boys. The court allowed Emily visitation for most of the summer, the first and last full weekends of every month, and certain holidays. Emily appealed.

## II. ISSUES ON APPEAL

1. Whether the trial court improperly imposed the burden of proof on Emily to show that relocation was in the children's best interests.

2. Whether the trial court considered all relevant factors in Idaho Code section 32-717 when evaluating whether relocation would be in the children's best interests.

3. Whether the trial court abused its discretion by entering the August 2013 Temporary Orders without including any findings of fact or conclusions of law.

## III. STANDARD OF REVIEW

This is a permissive appeal under Idaho Appellate Rule (I.A.R) 12.1, and as such, the Court reviews the magistrate judge's decision without the benefit of a district court appellate decision. *Roberts v. Roberts*, 138 Idaho 401, 403, 64 P.3d 327, 329 (2003). A trial court's child custody decision will not be overturned absent an abuse of discretion. *Id.* A trial court does not abuse its discretion as long as the court "recognizes the issue as one of discretion, acts within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reaches its decision through an exercise of reason." *Id.* When the trial court's decisions affect children, the best interests of the child is the primary consideration. *Id.* at 403–04, 64 P.3d at 329–30.

# IV. ANALYSIS

Before we reach the substantive issues, Jeff argues that this court does not have jurisdiction because the notice of appeal was not filed within 14 days of the final order as required by I.A.R. 12.1(b). Idaho Appellate Rule 12.1(a) states "[w]henever the best interest of a child would be served by an immediate appeal to the Supreme Court, any party or the magistrate hearing a case may petition the Supreme Court to accept a direct permissive appeal of a final judgment . . . ." Idaho Appellate Rule 12.1(b) requires that the motion for permissive appeal must be filed within 14 days of that final judgment.

Here, Emily appealed the trial court's January 28, 2014 Order granting Jeff's petition for modification on March 10, 2014, and amended that appeal on April 16, 2014. Although Emily's amended notice of appeal was filed before the trial court's May 16, 2014 Final Judgment, the appeal is properly before this court because Idaho Appellate Rule 17(e)(2) allows a party to prematurely file for appeal. Idaho Appellate Rule 17(e)(2) states "[a] notice of appeal filed from an appealable judgment or order before formal written entry of such document shall become valid upon the filing and the placing the stamp of the clerk of the court on such appealable judgment or order, without refiling the notice of appeal." Because the notice of appeal was timely under I.A.R. 17(e)(2), this Court has jurisdiction.

## A. The trial court properly imposed the burden of proof on Jeff to show that the move was not in the children's best interests.

Emily argues the trial court improperly shifted the burden to her to show that moving to McCall was in the boys' best interests. She argues that because her move to McCall was within the 100 miles allowed in the custody agreement, the burden remains on Jeff. Jeff contends that this Court's rule is that a custodial parent has the burden of proving that a move would be in the best interests of the children whenever that custodial parent moves.

A party seeking to modify a previously existing custody order must first demonstrate that a material, substantial change in circumstances occurred since the earlier custody order. *Osteraas v. Osteraas*, 124 Idaho 350, 353, 859 P.2d 948, 951 (1993). A court then will determine custody and where the children will reside using the best interests of the child standard. *Roberts*, 138 Idaho at 405, 64 P.3d at 331. Both Emily and Jeff wanted to modify the custody order. Jeff requested primary custody and child support modification. Emily requested to modify the holiday schedule. The trial court noted that the parties agreed that conflict between them constituted a material, substantial change in circumstances sufficient for the court to reconsider

4

the earlier custody order's holiday schedule. The court also found Emily's move was a material, permanent, and substantial change because the move (1) was to another city, county, and school district; (2) impacted the current visitation schedule because it changed the exchange location and commute time; and (3) impacted Jeff's unscheduled visitation time. For these reasons, the court found Jeff had met his burden to prove by a preponderance of the evidence that a material, permanent, and substantial change had occurred since the last order. Neither party disputes these findings.

The issue is therefore which party had the burden to prove the children's best interests. "The party seeking modification has the burden of justifying a change in custody." *Woods v. Sanders*, 150 Idaho 53, 57, 244 P.3d 197, 201 (2010). However, we have also stated in *Roberts* that "the moving parent has the burden of proving relocation would be in the best interests of the child before moving in violation of a previous custody arrangement." 138 Idaho at 405, 64 P.3d at 331. This language indicates that the burden only shifts from the parent seeking a custody modification when two elements are met: (1) the other parent seeks permission to relocate and (2) that relocation would violate an existing custody arrangement. Until a court shifts the burden under this rule, the burden is on the party who moves the court for the modification.

Jeff contends that *Roberts* should not be read narrowly to require a party to violate a custody agreement before the burden is shifted to the relocating parent. He cites *Bartosz v. Jones*, 146 Idaho 449, 455, 197 P.3d 310, 316 (2008), where the Court stated that Idaho "requires the moving parent to prove that relocation is in the child's best interest." However, Jeff reads *Bartosz* incorrectly. The Court in *Bartosz* stated in a preceding paragraph: "When a move would violate an existing custody arrangement, the parent seeking permission to relocate with the child has the burden of proving that the relocation is in the best interest of the child." *Id.* at 454, 197 P.3d at 315. When read in context, it is apparent that a court only shifts the burden to the relocating party when relocating the children would violate the custody order. Further, the issue in *Bartosz* was whether Idaho law imposed a presumption against relocation. *Id.* at 457, 197 P.3d at 318. The court held there was no presumption against relocation. *Id.* Thus, *Bartosz* does not hold that whenever a party relocates, that relocating party bears the burden of proving the move is in the child's best interests.

Here, Jeff moved the court to modify the custody agreement. The agreement stated:

> We agree that a move by either parent of more than 100 miles from Sweet, ID
> will make this plan impractical or unworkable. Therefore, neither parent will
> make such a move with a child without our mutual written agreement or a
> decision by the court that it is in a child's best interest to move.

Emily's move to McCall was within the one hundred mile limit in the custody agreement. Accordingly, Emily's move fell outside of the *Roberts* rule, which shifts the burden to the custodial parent when the move, alone, violates the custody arrangement. Because Jeff moved the court for the modification and Emily's relocating the boys to McCall did not violate the custody arrangement, Jeff had the burden to prove the move was not in the boys' best interests.

While Emily contends that the trial court shifted the burden of proof to her based upon her request to move the boys to McCall, there is no evidence in the record that the court did so. At trial, the court had Jeff present his case first, which was consistent with the fact that he moved the court for the change in custody. The trial court also understood that the burden of proof was on Jeff to show that a material, permanent, and substantial change had occurred. The court stated that "Jeff has met his burden by a preponderance of evidence that a material, permanent, and substantial change has occurred since the date of the last order." The trial court noted that the move was approximately 70 miles. However, the trial court never found that Emily's move violated the existing custody agreement and never mentioned the 100 miles in the agreement. Instead, the court did what the custody agreement contemplated when the parties could not agree: the court made a decision about whether it was in the boys' best interests to move.

We acknowledge that the trial court stated the *Roberts* rule, specifying that when a parent seeks to relocate with children in violation of an existing custody arrangement, that parent bears the burden of proving that relocation is in the children's best interests. However, the court never stated that it shifted the burden of proof onto Emily under this rule. Instead, the court focused on the factual and legal positions Emily took while arguing the move to McCall was in the boys' best interests. The court listed Emily's reasons for the move, analyzed the boys' experiences in Emmett, and noted that the move was not in the boys' best interests because it would negatively impact their relationship with Jeff and their historic ties to the Emmett community.

The court then addressed Emily's arguments in favor of moving the boys. The court first found Emily's argument that McCall had better educational opportunities unpersuasive. The court noted that there was no evidence of what opportunities were available in McCall that were not also available in Emmett and that the McCall schools' better test scores did not dictate what

was in the boys' best interests. The court then noted that while the ample recreational opportunities in McCall were wonderful, the boys could still have those opportunities while keeping their established roots in Emmett.

The court's factual analysis also does not show the trial court shifted the burden onto Emily. Instead, the court's opinion used the Idaho Code section 32-717 factors to analyze the best interests of the children. The court explained that its findings were echoed in the 2012 Boise County magistrate's decision. The court reasoned that it found

> the boys' adjustment to their home in the Emmett area, school and family favors the Emmett area; the boys are involved in school, church, rodeo, 4-H, and scouts in the Emmett area; and the need to promote continuity and stability in the life of the boys likewise favors the Emmett area.

The court then stated:

> For the foregoing reasons, and considering all the factors relevant to this case and as outlined in I.C. 32-717, this court finds that it is not in the boys' best interest to move to McCall, Idaho.

Based upon this analysis, the court made Jeff the primary custodian. This is consistent with Idaho law because the children's best interests governs relocation decisions. *Bartosz*, 146 Idaho at 456, 197 P.3d at 317. The factors enumerated in section 32-717 provide guidance in determining whether relocating is in a child's best interests. *Id.* at 454, 197 P.3d at 315. Thus, the trial court's opinion only demonstrates that the court made its decision while looking to the proper standard for the best interests of the children, not that it improperly shifted the burden of proof onto Emily. The trial court did not err when it allocated its burden of proof onto Jeff and analyzed the case according to the best interests of the children.

**B. Whether the trial court considered all relevant factors in Idaho Code section 32-717 when it evaluated whether relocation would be in the children's best interests.**

Emily argues that the trial court's analysis under Idaho Code section 32-717 was improper because the court overemphasized factors favorable towards the boys staying in the Emmett area and underemphasized factors favoring a move to McCall. A trial court's decision in a child custody case will be upheld if it is not an abuse of discretion and is supported by substantial, competent evidence. *Bartosz v. Jones*, 146 Idaho 449, 458, 197 P.3d 310, 319 (2008).

Emily first emphasizes that the current custody agreement states that if either parent moves outside of a 100 mile radius from Sweet, then they will create a new parenting plan.

7

Emily therefore seems to argue that any move not in violation of that provision of the parenting agreement is per se in the boys' best interests. However, Emily fails to recognize that a violation or non-violation of the parenting plan is independent of a finding of the boys' best interests. Whether Emily violated the custody agreement only applies to where the court places the burden using the *Roberts* rule. Thus, the parenting plan is not relevant to the court's analysis of the boys' best interests.

Idaho Code section 32-717 provides a non-exclusive list of several factors the court uses to determine if a move is in the best interests of the child:

> (a) The wishes of the child's parent or parents as to his or her custody; (b) The wishes of the child as to his or her custodian; (c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings; (d) The child's adjustment to his or her home, school, and community; (e) The character and circumstances of all individuals involved; (f) The need to promote continuity and stability in the life of the child; and (g) Domestic violence . . . , whether or not in the presence of the child.

The trial court stated these factors and other factors. Emily argues that the court abused its discretion by focusing too much on the following factors: (1) the child's adjustment to his home, school, and community; and (2) the need to promote continuity and stability in the child's life. Additionally, she argues the court did not consider the boys' interactions with their parents and siblings and the character and circumstances of all individuals involved.

Idaho Code section 32-717 requires a court to weigh factors against each other. The trial court concluded that several factors favored allowing the boys to live in Emmett with Jeff. As to the factor analyzing the boys' adjustment to their home, school, and community, the trial court found that the boys were well established in the Emmett area and had strong friendships in the area and at school. In addition, the court found that the boys did not have close connections to the McCall community and that a move there would disrupt their connections in Emmett. While the record indicates the boys participated in summer camps and programs in McCall, the boys participated in many Emmett area activities including sports, boy scouts, 4-H, church, and rodeos. Because substantial and competent evidence in the record indicates that Emmett is the place where the boys have friends, family, community events, and their school, the trial court acted within its discretion when it emphasized that the boys' ties with the Emmett area are greater than their ties to McCall.

8

The trial court also discussed the "continuity and stability in the life of the child" factor. The court cited the many community events the boys regularly attend. The record indicates that if the boys move to McCall, then they will miss out on these events, and will not see their extended family as often. Additionally, the court found that Jeff's casual visits to school lunches and recess would diminish, which would negatively impact the boys' relationship with their father. Therefore, the court could reasonably find that a move to McCall would disrupt the boys' lives, friendships, activities, and regular unscheduled visits with Jeff. Thus, the trial court acted within its discretion to emphasize the continuity factor.

Emily argues the trial court gave the boys' interaction with their parents and siblings "virtually no discussion." However, the trial court did discuss this factor. The court found that the boys maintain a strong loving bond with Jeff and Emily, the boys' older and younger half-siblings, and Clint, but these relationships would not be significantly impacted by awarding Jeff primary custody. The court noted the boys' half-sister had graduated high school and would attend college out of state. Accordingly, the court found that the relationship the boys have with her can continue during the summers. Also, the court stated that the boys' half-brother is young and the boys could still be enthusiastic big brothers during their visits and summers. The court found that the boys have healthy contact with Clint's two children from a previous marriage, but not such constant contact as to make a significant difference in the analysis. Therefore, the trial court discussed this factor and articulated its reasons for not weighing this factor towards finding the move to McCall was in the boys' best interests.

Emily also argues the trial court did not properly consider Jeff's character because it did not discuss his "hateful text messages." Emily cites the Boise County magistrate court's October 2012 decision that criticized Jeff's behavior via text. Emily's argument focuses on her contentious relationship with Jeff, rather than his relationship with his children or his character overall. She neglects to note the Boise County magistrate's criticism that indicated she was also responsible for her and Jeff's communication problems. Indeed, the text messages in the record show that both parties are at fault for their communication breakdown. This is in addition to the constant resort to the courts to manage their family. Further, the court did discuss Jeff's character and relationship with the boys: the court found that Jeff has taken every opportunity to spend more time with the boys and actively participates in their lives by volunteering at their events

9

and eating lunch with them. Substantial and competent evidence supports this finding. Thus, the court properly considered this factor and did not abuse its discretion.

Additionally, Emily argues that the trial court erred by placing too much emphasis on the effects of the move to McCall when *Peterson v. Peterson*, 153 Idaho 318, 281 P.3d 1096 (2012), states that a move is only one factor courts consider under Idaho Code section 32-717. Contrary to Emily's argument, *Peterson* supports the trial court's decision that it would be in the boys' best interests to stay in Emmett. In *Peterson*, a magistrate judge allowed a mother to move to Utah during the divorce proceedings. *Id.* at 324, 281 P.3d at 1102. Applying Idaho Code section 32-717, the Court held that the magistrate did not abuse its discretion when it allowed the mother to relocate because of the connections the children had in Utah: they had family there, they previously attended church there, and the parties discussed moving to Utah prior to the divorce. *Id.* at 324–25, 281 P.3d at 1102–03. Conversely, in this case the boys have little connection to McCall and many connections to the Emmett area. Although the move to McCall is just one factor, the court also considers residual effects of a move—distance from the boys' old friends and family, changing schools, and the reduced amount of time they will be able to spend with their father. The trial court's emphasis properly considered the move as one factor, but then looked to other factors consistent with *Peterson*.

Similarly, Emily misconstrues *Markwood v. Markwood*, 152 Idaho 756, 274 P.3d 1271 (Ct. App. 2012), and argues that the cases are so factually similar that the results should be the same. In *Markwood*, a mother had primary custody and the children's father had visitation rights. 152 Idaho at 758, 274 P.3d 1273. The father lived a forty-five minute drive away from the mother's residence in Moscow, Idaho. *Id.* The mother then moved to The Dalles, Oregon, which was a much farther drive. *Id.* at 759, 274 P.3d 1274. The trial court speculated in dicta that the ideal scenario might be for the children to continue to live in Moscow where they were well adjusted. *Id.* at 760, 274 P.3d 1275. Because neither parent lived in Moscow, the court then applied Idaho Code section 32-717's factors and found that it was in the children's best interests for the mother to have primary custody in Oregon. *Id.* The Court of Appeals affirmed, holding the trial court properly analyzed all of the relevant factors. *Id.* at 761–62, 274 P.3d at 1276–77. Unlike *Markwood*, where transferring primary custody would not keep the children in the area they grew up, in this case the court analyzed the relevant factors and concluded the boys' best

interests were served by transferring primary custody to Jeff because he lives near Emmett—the area the boys have lived since Jeff and Emily's divorce.

Overall, the trial court discussed the facts supporting the boys remaining in the Emmett area and the reasons why the benefits of remaining in that area outweighed any benefits of moving to McCall. The court's analysis addressed the Idaho Code section 32-717 factors and the court exercised reason in weighing those factors. Thus, we find the court did not abuse its discretion when it concluded that primary custody with Jeff is in the boys' best interests.

## C. Whether the trial court abused its discretion by entering the August 2013 Temporary Orders without including any findings of fact or conclusions of law.

Emily argues that the August 2013 Temporary Order was inconsistent with Idaho law because there were no findings of fact or conclusions of law to support the order. This Court does not decide moot issues. *Hoagland v. Ada County*, 154 Idaho 900, 912, 303 P.3d 587, 599 (2013). This Court must raise issues of mootness *sua sponte* because it is a jurisdictional issue. *In Re Doe I*, 145 Idaho 337, 340, 179 P.3d 300, 303 (2008). An issue is moot if it does not present an actual controversy capable of being concluded through judicial decree of specific relief. *Arambarri v. Armstrong*, 152 Idaho 734, 739, 274 P.3d 1249, 1254 (2012).

The August 2013 Temporary Order states that the minor children will continue to be enrolled in the Emmett School District "until further Order of the Court." Since then, the court entered its January 2014 decision and its February 2014 Third Modified Decree, which effectively replace the temporary order. If Emily objected to the temporary order, the time to appeal that issue was before the order was superseded. Because the order was superseded by the trial court's January 2014 decision and the subsequent May 16, 2014 Final Judgment, this issue is moot.

## V. CONCLUSION

We affirm. Neither party is awarded attorney fees because neither party claimed them. Costs to Jeff.

Justices EISMANN, J. JONES, HORTON and WALTERS, J., Pro tem, **CONCUR.**

11