**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 42588

| | | |
|---|---|---|
| **KRISSY M. LAMONT,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, March 2015 Term** |
| | ) | |
| **v.** | ) | **2015 Opinion No. 40** |
| | ) | |
| **MATTHEW J. LAMONT,** | ) | **Filed: April 21, 2014** |
| | ) | |
| **Defendant-Appellant.** | ) | **Stephen W. Kenyon, Clerk** |
| _____ | ) | |

Appeal from the Magistrate Court of the Seventh Judicial District of the State of Idaho, Lemhi County. Hon. Stephen J. Clark, Magistrate Judge.

The order of the magistrate court is <u>affirmed</u>. Attorney's fees and costs on appeal to respondent.

Law Office of Joshua A. Garner, PLLC, Rexburg, attorneys for appellant. Joshua A. Garner argued.

Snook Law Office, Salmon, and Brady Law, Chtd., Boise, attorneys for respondent. Chip D. Giles argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This expedited, permissive appeal presents a child custody dispute. Appellant Matthew Lamont and Respondent Krissy Lamont were married and have two minor children. After the divorce, Krissy was granted primary physical custody of the children, and until recently Krissy and Matthew resided in Salmon, Idaho. In June of 2014, however, Matthew learned that Krissy planned to relocate with the children to Meridian, Idaho. He filed a petition in magistrate court to modify the divorce decree to obtain primary physical custody of the children. Krissy filed a

cross-petition to relocate the children to Meridian. After a hearing, the magistrate court denied Matthew's motion and granted Krissy's motion. Matthew appeals to this Court. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On May 29, 2009, Krissy and Matthew divorced. Krissy and Matthew have two minor children: T.L. and M.L., who were thirteen years old and eleven years old, respectively, at the time of the magistrate court's decision. Krissy was granted primary physical custody of the children after the divorce, and Matthew had visitation consisting of six overnights every other week and "a two week block" in the summer. Under this visitation schedule, the children spent approximately sixty percent of their time with Krissy and forty percent of their time with Matthew. The visitation schedule was based on Krissy and Matthew both residing in the Salmon area.[1]

On June 18, 2014, Matthew filed a petition for modification of the child custody order. Matthew alleged that Krissy intended to relocate the children from Salmon. He requested that the magistrate court grant him primary physical custody of the children. On June 27, 2014, Krissy answered and filed a counter-petition for modification, seeking to relocate the children from Salmon to Meridian and to modify Matthew's visitation schedule based on the relocation. On August 13, 2014, the magistrate court held a hearing on Krissy's and Matthew's motions to modify child custody wherein both parties presented evidence.

On August 28, 2014, the magistrate court issued its findings of fact and conclusions of law. Ultimately, the magistrate court concluded that it was in the best interests of the children to allow the relocation. The magistrate court granted Krissy's motion to relocate and denied Matthew's motion. The magistrate court ordered that Matthew was entitled to visitation at least once a month for a minimum of three days. The magistrate court explained that the visits would occur on extended holidays or school breaks, and the magistrate court outlined the specific dates in its decision. If there was no holiday or break that month, the magistrate court ordered that the visit would begin on Thursday evening and end at noon on Sunday. The magistrate court recognized: "[T]he scheme would mean that the children would miss a day of school. But the alternative is a series of weekend visits where 10 hours of each visit would be eaten up by transportation." The magistrate court also ordered that Matthew would have the children in the

---

[1] Before this visitation schedule, the parties had other issues with the divorce decree and had returned to court multiple times.

summer, starting two weeks after school ended until two weeks before school started. On August 28, 2014, the magistrate court issued an order granting Krissy's motion.

Matthew filed a motion for a permissive appeal pursuant to Idaho Appellate Rule (I.A.R.) 12.1. On September 26, 2014, the magistrate court denied Matthew's motion. On November 7, 2014, the Court granted Matthew's request for a permissive appeal and expedited the appeal.

## III. ISSUES ON APPEAL

1. Whether the magistrate court abused its discretion by denying Matthew's motion for primary physical custody and allowing Krissy to relocate with the children.

2. Whether either party is entitled to attorney's fees on appeal.

## IV. STANDARD OF REVIEW

> This is a permissive appeal under [I.A.R.] 12.1, and as such, the Court reviews the magistrate judge's decision without the benefit of a district court appellate decision. *Roberts v. Roberts*, 138 Idaho 401, 403, 64 P.3d 327, 329 (2003). A trial court's child custody decision will not be overturned absent an abuse of discretion. *Id.* A trial court does not abuse its discretion as long as the court "recognizes the issue as one of discretion, acts within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reaches its decision through an exercise of reason." *Id.* When the trial court's decisions affect children, the best interests of the child is the primary consideration. *Id.* at 403–04, 64 P.3d at 329–30.

*Suter v. Biggers*, 157 Idaho 542, 545–46, 337 P.3d 1271, 1274–75 (2014).

> "An abuse of discretion occurs when the evidence is insufficient to support a magistrate's conclusion that the interests and welfare of the children would be best served by a particular custody award or modification." *Nelson v. Nelson*, 144 Idaho 710, 713, 170 P.3d 375, 378 (2007). When reviewing the magistrate court's findings of fact, this Court "will not set aside the findings on appeal unless they are clearly erroneous such that they are not based upon substantial and competent evidence." *Id.* Even if the evidence is conflicting, findings of fact based on substantial evidence will not be overturned on appeal. *Id.*

*Peterson v. Peterson*, 153 Idaho 318, 320–21, 281 P.3d 1096, 1098–99 (2012) (citation omitted).

## V. ANALYSIS

**A. The magistrate court had substantial and competent evidence to support its findings of fact.**

Matthew challenges four factual findings by the magistrate court as lacking substantial and competent evidence. We hold that the magistrate court had substantial and competent evidence for its findings of fact.

### 1. *The children's preference to live with Krissy*

3

First, Matthew challenges the magistrate court's findings on the wishes of the children. The magistrate court found: "the interview with [Ann Just of Family Court Services] shows the children to be struggling with the issue of where to live. They are however united in desiring to live primarily with their mother with frequent visitation with Mr. Lamont." Based on our review of Just's report, the magistrate court's findings are supported by substantial and competent evidence. More importantly, the magistrate court's written and oral statements show that the magistrate court did not perceive its finding on the children's wishes as an unequivocal factor in favor of relocation. The magistrate court found that the children were "struggling with the issue of where to live." Further, the magistrate court stated at the hearing that it did not see the children's desire to live with Krissy "as a 'yes' or no,'" but rather "sort of somewhere in the gray, on a continuum." The magistrate court also stated that it would be "weighing that out" along with the other relevant factors. We conclude that the magistrate court's findings on the wishes of the children were not clearly erroneous.

2. *Krissy is a superior parent*

Second, Matthew challenges the magistrate court's finding: "The mother is a superior parent and has been the primary caregiver, although that gap has diminished during the years." We believe that Matthew misreads the magistrate court's finding. The magistrate court did not find that Krissy was "the" superior parent, as represented by Matthew. Both Krissy and Matthew submitted evidence of their parenting skills, on which the magistrate court made factual findings supported by substantial and competent evidence. The magistrate court clearly stated on the basis of evidence presented by Krissy and her witnesses and Matthew and his witnesses that both parents were fit and exhibited excellent parenting skills. The magistrate court found that Krissy was a superior parent and the primary caregiver, but also that Matthew "has a good relationship with the children" and that the parties "have been virtually sharing the care of the children." Specifically, the magistrate court found that Matthew "supports the children in their activities." The magistrate court based its findings regarding both parents and their close, supporting parental relationship to the children on substantial and competent evidence. Thus, the magistrate court's characterization of Krissy as "a superior parent" does not imply that the magistrate court found that Krissy was *the* superior parent. This finding does not indicate that Krissy was the better parent, that Matthew was the inferior parent, or that the magistrate court was comparing

4

their parenting abilities. The argument submitted by Matthew to challenge this finding is misleading. There was no error.

        *3.*         *The Salmon School District's poor financial condition*

Third, Matthew challenges the magistrate court's finding: "In relying upon the current state of the schooling in Salmon, along with the other factors noted above, the Court can conclude that it is in the best interests of the children to allow the relocation." Matthew argues that the magistrate court erred by relying on "the current state of the schooling" because the evidence did not support a finding that the Salmon School District was "underfunded and in flux."

The magistrate court had substantial and competent evidence for its findings on the Salmon School District. Jim Smith, the part-time school superintendent, agreed that one of the reasons he was hired was "related to a negative budget issue." He testified that "financially the district was in trouble." Smith also testified that there was no doubt that he would have to make budget reductions, which were "almost always people." James Robert Infanger previously served on the school board for six years, and he testified about the state of the school district as well. He testified that "our district's underfunded." He explained that they closed down one school when he was on the board and they recently closed down the junior high school. With the close of the junior high school, Infanger also explained that the school district had only one gym for six teams. He also testified:

> What I really feel bad about is, the kids in Salmon don't have a lot of opportunities. . . . [M]y wife and I considered moving from Salmon . . . just because the kids in the community don't really have the same opportunities as the kids outside of Salmon. There's so many more programs, so many more sports programs.

He further elaborated that other school districts "just have so many more opportunities that our poor little district just doesn't have. We just don't have the money to provide the same educational opportunities." In addition, Krissy's former coworker in the school district testified that the electives offered by the school were limited and the students had to pay for additional electives online. Finally, Krissy discussed the opportunities for the children in the Meridian School District. She also briefly discussed the consolidation of the Salmon schools, the Salmon schools' low ratings, and the lack of staff.

Based on this testimony, the magistrate court made multiple findings regarding the Salmon School District. The magistrate court found:

[T]he Salmon School District does have financial issues. The Court cannot disregard the testimony of the superintendent of the Salmon Schools who painted a different picture of the school system. He acknowledged it to be underfunded and in flux. A former Salmon School District Board Member, Mr. Infanger, considered moving from the area because of the quality of the schools. . . . Never the less [sic], the educational needs of the children have been met. The children do not have any ongoing special needs and as a result the school although challenged appears to be functioning.

The magistrate court also found that the quality of schooling in Salmon was adequate, but there were more opportunities for electives, sports, and extracurricular activities in the Meridian school system. The magistrate court recognized that it "has concerns about the future" of the Salmon schools due to "ongoing financial issues." The magistrate court stated: "The Salmon School District, while meeting the needs of the children, does not have the options which the Meridian School District provides. Given the testimony of the superintendent, as well as Mr. Infanger the former Board member, it does not appear to be getting any better." The magistrate court then considered "the current state of the schooling in Salmon," among other factors, to determine the children's best interests. Based on the testimony discussed above, the magistrate court had substantial and competent evidence to support its findings on the Salmon School District.

Further, Matthew submits that the magistrate court's decision was "confusing and appears contradictory" because the magistrate court also found that the comparison of Salmon and Meridian was neutral. We disagree. A review of the magistrate court's findings shows that the magistrate court separated its analysis of (1) the children's educational opportunities in the two school districts and (2) the children's general well-being in the two locations. Matthew's argument regarding these factual findings is unconvincing.

### 4. Krissy's lack of employment opportunities in Salmon

Fourth, Matthew challenges the magistrate court's multiple findings regarding Krissy's possible employment opportunities in Salmon. The magistrate court found that Krissy's income from her new job with Meridian School District was "above that which she would have been able to secure in the Salmon area" and "provides enhanced income opportunities . . . that cannot be matched in the Salmon area." The magistrate court also found, "The move to Meridian not only gives Ms. Lamont financial opportunity and the ability to more successfully care for her children, but should she remain in Salmon finances would pose a substantial hardship. Financially, there is both a pull towards Meridian and a push from Salmon." In its conclusion, the magistrate court

found, "For the mother the financial move makes sense not only because of the positive aspects of her job, but the negative job factors in Salmon."

The magistrate court's findings were not clearly erroneous. Krissy testified that she applied for her current job with the Meridian School District because she knew "there were going to have to be cuts" in the Salmon School District. She earned $18.27 per hour with the Meridian School District plus benefits such as health insurance, life insurance, and retirement. Krissy stated that to her knowledge there were no jobs available in Salmon with a wage of eighteen dollars an hour plus benefits.

She further testified that she can "help" her children "more financially now" with her new job. Prior to her employment with the Meridian School District, Krissy worked full-time as an administrative assistant, support clerk, and federal programs director/coordinator for the Salmon School District with a wage between eleven and twelve dollars an hour plus health insurance. Superintendent Smith testified that he viewed Krissy's position in the Salmon School District as possibly "an excessive position" and identified it for possible reduction. He also testified that if Krissy remained employed with the Salmon School District, there would have been a significant salary reduction and "possibly worse." He posited that her hourly wage would have been reduced to nine dollars an hour and her time cut in half to twenty hours a week. Smith also explained that there was no possibility that Krissy could have stayed on with the Salmon School District with the same income as before the budget cuts.

Further, he testified that no one had been hired to replace Krissy yet and other employees had taken on Krissy's job responsibilities for the time being. Krissy also explained: "[O]bviously there were going to be financial cutbacks in our family. I don't feel I could have raised them making $9 an hour at 20 hours a week, and pay my rent and take care of them." She recognized, however, that she did not apply for any other jobs in the Salmon area. She checked with the local hospital after her offer to work in Meridian, but there were no job openings. Based on evidence in the record, the magistrate court had substantial and competent evidence for its findings on Krissy's lack of employment opportunities and likelihood of financial hardship in Salmon.

B.      **The magistrate court did not abuse its discretion by allowing Krissy to relocate with the children to Meridian.**

Matthew argues that the magistrate court's decision to allow relocation ignored the preference for joint custody. He submits that Krissy failed to present sufficient evidence to rebut the presumption of joint custody and to show that relocation was in the children's best interests.

Specifically, Matthew explains that he now has only forty overnights with the children during the school year, compared to 121 overnights prior to the new visitation schedule. He contends that Krissy failed to present sufficient evidence to "demonstrate that this drastic shift in custody was in the children's best interest." He further contends that allowing the children to remain in Salmon is preferable because Krissy would have no less than six overnights with the children each month due to the Salmon schools' four-day school week.

"A party seeking to modify a previously existing custody order must first demonstrate that a material, substantial change in circumstances occurred since the earlier custody order. A court then will determine custody and where the children will reside using the best interests of the child standard" provided in Idaho Code section 32-717. *Suter v. Biggers*, 157 Idaho 542, 546, 337 P.3d 1271, 1275 (2014) (citation omitted). In this case, Matthew does not challenge the magistrate court's finding that a material, substantial change in circumstances occurred due to Krissy's relocation.

"Idaho Code § 32-717 provides a directive for the trial court to determine the best interest of the children when making a custody decision. The statute sets forth non-exclusive factors to aid in making its determination." *Hoskinson v. Hoskinson*, 139 Idaho 448, 454, 80 P.3d 1049, 1055 (2003) (citation omitted). Idaho Code section 32-717 states in this respect:

> (1) In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children. The court shall consider all relevant factors which may include:
>
> (a) The wishes of the child's parent or parents as to his or her custody;
> (b) The wishes of the child as to his or her custodian;
> (c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
> (d) The child's adjustment to his or her home, school, and community;
> (e) The character and circumstances of all individuals involved;
> (f) The need to promote continuity and stability in the life of the child; and
> (g) Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

I.C. § 32-717(1). "This list of factors is not exhaustive or mandatory and courts are free to consider other factors that may be relevant." *Peterson v. Peterson*, 153 Idaho 318, 322, 281 P.3d 1096, 1100 (2012) (quoting *Bartosz v. Jones*, 146 Idaho 449, 454, 197 P.3d 310, 315 (2008)).

For relocation cases specifically, the Court has recognized:

> [I]t would not be particularly helpful for this Court to enunciate a laundry list of factors that could or should be considered in this type of case. Factors relevant in some relocation cases may be irrelevant in others and, under the current framework, trial courts are free to consider factors unique to each case.

*Bartosz*, 146 Idaho at 456, 197 P.3d at 317. "Courts may consider factors not enumerated in section 32-717" to determine whether relocation is in the best interests of the children. *Id.* at 455, 197 P.3d at 316.

"Under Idaho law, unless one parent is a habitual perpetrator of domestic violence, it is presumed that an award of joint custody serves a child's best interest." *Id.* at 456, 197 P.3d at 317 (citing I.C. § 32-717B(1), (4)–(5)). "The presumption may be overcome by a preponderance of the evidence." *Id.* at 456 n.5, 197 P.3d at 317 n.5 (citing I.C. § 32-717B(4)). "The presumption in favor of joint custody is not equivalent to a presumption against a custodial parent relocating with a child." *Id.* at 456, 197 P.3d at 317. "Idaho law does not impose a presumption against relocation." *Peterson*, 153 Idaho at 324, 281 P.3d at 1102. "[T]he best interest of the child standard governs relocation decisions." *Bartosz*, 146 Idaho at 456, 197 P.3d at 317. "A parent's move is only one factor to be considered when awarding custody." *Id.* at 457, 197 P.3d at 318.

Generally, "[t]he party seeking modification has the burden of justifying a change in custody." *Suter*, 157 Idaho at 546, 337 P.3d at 1275 (quoting *Woods v. Sanders*, 150 Idaho 53, 57, 244 P.3d 197, 201 (2010)). That burden shifts to the relocating party, however, when relocating the child would violate the previous custody arrangement. *Id.* at 547, 337 P.3d at 1276. "Once the parent seeking permission to relocate proves that relocation is in the child's best interest, he or she will be allowed to move with the child." *Bartosz*, 146 Idaho at 456–57, 197 P.3d at 317–18.

In this case, the magistrate court first discussed in great detail the evidence presented at the hearing. The magistrate court outlined Krissy's employment, parenting skills, and relationship with the children. The magistrate court reviewed the advantages and disadvantages to living in Meridian. The magistrate court discussed Matthew's family environment with Jennifer, Matthew's and Jennifer's employment, Matthew's parenting skills, and his relationship with the children. The magistrate court then reviewed the advantages and disadvantages to living in Salmon. Finally, the magistrate court made findings on the wishes of the children and miscellaneous matters. We recognize that the magistrate court's factual findings were extensive and thorough.

After these comprehensive findings, the magistrate court considered the statutory factors in Idaho Code section 32-717(1) and the relevant non-statutory factors. The magistrate court stated that the following statutory factors were in favor of the relocation:

(1) The wishes of the mother;
(2) The wishes of the children to remain with Krissy;
(3) The interaction or relationship of the children with their mother as the primary caregiver and her "lauded" parenting skills;
(4) "The character and circumstances of all individuals involved is essentially neutral. Both are stable and can provide an adequate home for the children to meet their physical needs. Both parents have been involved in extracurricular activities and the children have bonded with their parents";
(5) Although the children's needs were taken care of in the Salmon schools, there were more opportunities for electives, sports, and extracurricular activities in the Meridian School system. The ongoing financial issues could negatively impact the Salmon School District;
(6) No issue of domestic violence; and
(7) Krissy had more financial opportunity in Meridian to better care for her children and remaining in Salmon "would pose a substantial hardship."

Conversely, the magistrate court stated that the following statutory factors were in favor of Krissy remaining in Salmon or transferring custody to Matthew:

(1) Considering that the children lived in Salmon all their lives and have flourished in the area, "the need to promote continuity to the children argues for primary physical custody to be with Mr. Lamont/Salmon area";
(2) The children have family and friends in Salmon and were integrated into the community. There was only a paternal aunt and family friend in Meridian;
(3) The wishes of the father to raise children in Salmon; and
(4) "Both parents have demonstrated stability, but Mr. Lamont is now married to a woman who has a good relationship with the children of the parties. Ms. Lamont has had at least one romantic relationship, but that does not impact her stability."

The magistrate court then turned to non-statutory factors. The magistrate court first considered the reason for relocation, recognizing that a financial reason was a relevant factor, but that reason alone may not justify moving the children. The magistrate court acknowledged that the children were in their early teen years, where "peers hold great importance," and had established friends in Salmon. The magistrate court also recognized that the children were old enough to "be able to adapt to the changes in social milieu as well as any cultural changes from rural to a more urban lifestyle."

The magistrate court took note that Krissy "unilaterally" decided that the children would go with her to Meridian without considering other matters. Along the same lines, the magistrate court noted that Krissy wanted the children to maintain contact with Matthew, but she indicated

10

that she was "the ultimate decision maker." The magistrate court determined that Krissy's belief that she could act unilaterally to determine where the children would live "is to be held against her." The magistrate court then recognized that child support would be dependent on the parties' respective locations and that it could not "bind one parent to a particular locale." Finally, the magistrate court considered the different lifestyles available in Salmon and Meridian. The magistrate court found that both urban and rural life had advantages and disadvantages and were "in essence neutral." Due to the pros and cons of both urban and rural life, the magistrate court reasoned: "Many factors are essentially neutral as there is no inherent advantage in an urban lifestyle over that of a more rural nature."

The magistrate court's thorough discussion of its factual findings and the relevant factors indicates that the magistrate court was cognizant of the difficulty of its decision in this particular case. In fact, the magistrate court explicitly stated, "[T]hese are not easy decisions. . . . This is a very close decision and neither party is a clear victor." The magistrate court also stated that it had "changed and altered its decision several times before settling on a course of action." The detailed discussion provided by the magistrate court indicates that the magistrate court carefully and thoughtfully weighed the relevant factors within the applicable legal framework. We believe that the magistrate court made an exceptional effort in this case to reach a decision in the best interests of the children.

We conclude that the magistrate court applied the correct legal standards to its analysis. The magistrate court recognized that Krissy, the relocating parent, had the burden to prove the relocation was in the best interests of the children. The magistrate court also recognized the presumption in favor of joint custody. There was no error in the magistrate court's identification and application of the appropriate legal standards.

We also conclude that the magistrate court's decision, although a very close call, was a proper exercise of its discretion in a child custody matter. As reviewed above, the magistrate court made extensive factual findings supported by substantial and competent evidence. The magistrate court then provided a comprehensive discussion of the relevant factors and the legal standards. Based on our review of the magistrate court's decision, the magistrate court recognized the child custody issue as one of discretion, acted with the outer limits of that discretion and consistent with the legal standards—including the best interests of the children as of paramount importance—and reached its decision through an exercise of reason. We conclude

that the magistrate court did not abuse its discretion by finding that relocation was in the best interests of the children.

Further, we hold that the magistrate court's new child custody order was a proper exercise of discretion. "[E]qual visitation or residency time is not required for joint custody." *State v. Anderson*, 154 Idaho 54, 56, 294 P.3d 180, 182 (2013) (citing *Peterson*, 153 Idaho at 321, 281 P.3d at 1099).

> Joint physical custody shall be shared by the parents in such a way to assure the child a frequent and continuing contact with both parents but does not necessarily mean the child's time with each parent should be exactly the same in length nor does it necessarily mean the child should be alternating back and forth over certain periods of time between each parent.
>
> The actual amount of time with each parent shall be determined by the court.

I.C. § 32-717(B)(2). The Court has recognized:

> [I]t is not unusual for the courts of Idaho to grant one parent the right to have child custody for one or two months during the year while the other parent is given custody for the remaining months of the year . . . where the welfare and best interest of the child require this.

*Bartosz*, 146 Idaho at 456, 197 P.3d at 317 (omission in original) (quoting *Koester v. Koester*, 99 Idaho 654, 657, 586 P.2d 1370, 1373 (1978)). "It is the province of the trial court to determine the amount of time the child spends with each parent." *Bartosz*, 146 Idaho at 456, 197 P.3d at 317 (citing I.C. § 32-717B(2)).

In this case, the new visitation schedule decreases Matthew's visitation time during the school year, but there is an increase in visitation during the summer. This increase of visitation in the summer indicates the magistrate court's intent to afford Matthew frequent and continuing contact while also considering the children's welfare and best interests, which is of paramount importance. An increase in summer visitation, rather than visits every weekend during the school year, minimizes any negative impact on the children's lives due to ten hours of car travel every weekend. By finding that relocation was in the children's best interests, the magistrate court properly exercised its discretion to determine of the amount of custodial time Krissy and Matthew would have with the children.

Finally, we reject Matthew's argument that the magistrate court failed to give appropriate weight to Krissy's "alienating behavior." It is the province of the trial court to give weight to the evidence, and "this Court does not substitute its view of the facts for that of the trial court." *King*

*v. King*, 137 Idaho 438, 442, 50 P.3d 453, 457 (2002). The magistrate court discussed Krissy's unilateral actions multiple times in its decision and stated that it would hold her conduct against her. There was no error in the magistrate court's consideration of Krissy's unilateral action.

**C.     We award Krissy attorney's fees on appeal.**

Both parties request attorney's fees on appeal. Matthew is not entitled to attorney's fees on appeal because his argument is insufficient and, further, he is not the prevailing party. *See* I.C. §§ 12-120, -121; *Clair v. Clair*, 153 Idaho 278, 291, 281 P.3d 115, 128 (2012).

Krissy requests attorney's fees pursuant to I.A.R. 41 and Idaho Code sections 12-120 and 12-121. "An award of attorney fees on appeal pursuant to I.C. § 12-121 is permitted for a prevailing party when the Court determines that an appeal was brought, pursued, or defended in a manner that was frivolous, unreasonable, or without foundation." *Clair*, 153 Idaho at 291, 281 P.3d at 128. Krissy submits that Matthew brought this appeal frivolously, unreasonably, or without foundation. We agree. As we discussed above, child custody disputes are left to the sound discretion of the trial court, and the magistrate court here did an exceptional job of carefully and thoughtfully deciding this case within the applicable legal standards. We are not convinced that there are any genuine issues of law or legitimate issues of fact presented by this appeal. *See Telford Lands LLC v. Cain*, 154 Idaho 981, 993, 303 P.3d 1237, 1249 (2013). Therefore, we award Krissy attorney's fees on appeal.

## VI. CONCLUSION

We affirm the order of the magistrate court. Attorney's fees and costs on appeal to respondent.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON, CONCUR.