## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 44056-2016

|  |  |  |
|---|---|---|
| CHELSEA REED, n/k/a CHELSEA SORENSEN, | ) | Boise, August 2016 Term |
|  | ) |  |
| Plaintiff-Respondent, | ) | 2016 Opinion No. 88 |
|  | ) |  |
| v. | ) | Filed: September 9, 2016 |
|  | ) |  |
| ZANE REED, | ) | Stephen W. Kenyon, Clerk |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) |  |

Appeal from the Magistrate Court of the Seventh Judicial District of the State of Idaho, in and for Bingham County. Hon. James H. Barrett, Magistrate Judge.

The amended judgment of the magistrate court is <u>affirmed</u>.

Jeffrey D. Brunson, Beard St. Clair Gaffney PA, Rexburg, argued for appellant.

Dustin W. Manwaring, Milestone Law Firm, Pocatello, argued for respondent.

_____

EISMANN, Justice.

This is an appeal out of Bingham County from an amended judgment in a divorce action permitting the mother to move to Montana with the parties' two children. We affirm the amended judgment.

### I.
### Factual Background.

On February 29, 2008, in Bingham County, Chelsea Reed obtained a divorce from Zane Reed on the ground of adultery, terminating their five-year marriage. They had twin daughters who were about three years of age. Chelsea was awarded primary physical custody of the twins, and Zane was awarded visitation as follows: (a) "Any given Saturday he desires from 9:00 a.m. until 6:00 p.m."; (b) "3 evenings per month from 6:00 p.m. until 8:00 p.m., with prior arrangements made with Plaintiff"; and "No overnight privileges at this time due to Defendant's

living arrangements." As the twins became older, the parties agreed to change Zane's visitation. Depending upon his work schedule, he picked up the twins every other weekend on Friday evening and returned them on the following Sunday morning. He also had the twins for periods of time during Christmas break and the summer vacation.

At the time of the divorce, Chelsea lived in Bingham County. In 2009, she married Daniel Sorensen, and they are still married. They have two sons born during their marriage.

In August 2010, Zane married and moved to Pocatello. That marriage later ended in divorce, and he and his wife have one child born during the marriage. At the time of the proceedings giving rise to this appeal, Zane was in a relationship with a woman named Kate, who lived in Boise with her two children. Zane's employer is headquartered in Boise, but he was required to travel to various construction projects in the southern part of the state. He rented a home in Bingham County from his grandfather, and he paid the rent to Kate who lives in a rental house in Boise. He testified that he was spending about half the time living with Kate in Boise.

In August 2015, Daniel graduated from Idaho State University with a Master's of Physician Assistant Studies degree. He had sent out about thirty applications for employment, but received only two job offers, one in Medicine Bow, Wyoming, and the other in Havre, Montana. Chelsea informed Zane that she and Daniel intended to move to Havre with the twins and that they hoped to return to Idaho in two or three years.

On August 4, 2015, Zane filed a petition to modify the divorce decree to provide either that Chelsea could not move the twins to Montana or, in the alternative, that he be awarded primary physical custody with Chelsea having liberal visitation. After a hearing, the magistrate court entered a temporary order permitting Chelsea to move to Havre with the twins and requiring her to be responsible for transporting the twins from Havre to Blackfoot, Idaho, in order for Zane to exercise visitation every other weekend.

Zane's petition to modify the divorce decree was tried on December 10 and 11, 2015. After the trial, the magistrate court issued a written decision finding that there had been a substantial and material change in circumstances since the entry of the divorce decree and that it was in the best interests of the twins for them to live in Montana with Chelsea. The court entered an amended judgment granting Zane the following visitation: three days each month during the school year, one week during Christmas vacation, and two weeks in June, in July, and in August.

Chelsea was to bear the cost of the transportation for Zane's visitation. Zane was granted permission pursuant to Idaho Appellate Rule 12.1 to appeal directly to this Court, and he did so.

## II.
## Was the Magistrate Court's Decision Based upon Substantial and Competent Expert Testimony?

Zane contends that the magistrate's decision was not based upon substantial and competent expert testimony. He does not cite any authority holding that a child custody decision must be based upon expert testimony. We have held that "[e]xpert testimony is not required to establish that termination would be in the child's best interests." *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). If it is not required in order to terminate parental rights, it is certainly not required to determine what custody arrangement is in a child's best interests. In a custody proceeding, "a court is not bound by the testimony of experts." *Levin v. Levin*, 122 Idaho 583, 587, 836 P.2d 529, 533 (1992).

Zane's real issue is that the magistrate court did not find persuasive the testimony of his two experts. He contends that the failure of the magistrate to even mention those opinions shows that the court did not even consider them. In its opinion, the court stated that it had "fully considered the evidence presented at trial." There is no reason to believe it did not do so. The court did not mention the opinions of Chelsea's expert either. "It is the province of the trial court to weigh conflicting evidence and to judge the credibility of witnesses." *King v. King*, 137 Idaho 438, 442, 50 P.3d 453, 457 (2002). "A court is not bound by the recommendations of an expert regarding custody plans, and the recommendations can be rejected if the court ultimately orders a custody arrangement based on the best interests of the child." *Clair v. Clair*, 153 Idaho 278, 290 n.3, 281 P.3d 115, 127 (2012); *accord Peterson v. Peterson*, 153 Idaho 318, 323, 281 P.3d 1096, 1101 (2012) (the magistrate court is not required to follow the recommendations of a custody evaluation). We have not required that a trial court explain why it did not find persuasive the opinion of an expert regarding child custody.

## III.
## Did the Magistrate Court Err in Permitting Chelsea's Expert to Testify Via Skype?

3

During the trial, Chelsea presented via Skype the testimony of an expert witness who resided in Havre, Montana. The issue of whether the expert's testimony could be presented via Skype was argued to the magistrate court on November 18, 2015, and on the same date it issued a written order stating that it could be. Zane contends that the court erred in permitting that testimony via Skype because there is no rule permitting it. When the matter was discussed at the beginning of the trial, the court stated that it was relying upon Rule 501 of the Idaho Rules of Family Law Procedure. That rule merely states, "The court may hold a telephone conference or video hearing on, (1) any motion, other than motions for summary judgment unless the parties stipulate or (2) any pretrial matter." I.R.F.L.P. 501.D. The rule does not purport to permit a video hearing at trial.

In arguing that this procedure justifies setting aside the magistrate court's decision, Zane points to Rule 712.A of the Idaho Rules of Family Law Procedure, which states, "In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by statute or by these rules, the Idaho Rules of Evidence, or other rules adopted by the Supreme Court of Idaho." He also points to decisions from other jurisdictions that stress the importance of live testimony in court. Had the magistrate court decided to deny Chelsea's motion to allow the expert to testify via electronic communication, the expert's testimony could have been admitted without her personal appearance in court. The expert was in Havre, Montana. Because she was out of state, her deposition could have been taken in Montana, and any or all of her deposition, to the extent that it was admissible under the rules of evidence applied as if she was then testifying in open court, could have been used by either party. I.R.F.L.P. 439.C.2.[1]

---

[1] Rule 439.C.2. provides:

> At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
> . . . .
>
> C. **Use in particular circumstances**. The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
> . . . .
> 2. that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the state of Idaho, unless it appears that the absence of the witness was procured by the party offering the deposition[.]

On appeal, it is not sufficient simply to show error. A party alleging error must also show that the error affected the party's substantial rights. Rule 810 of the Idaho Rules of Family Law Procedure states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Apparently in an attempt to show that the error was not harmless, Zane points to his attorney's difficulty in cross-examining the expert because of the delay between his question and the witness's response. He would ask another question before the answer was received, and he was admonished by the court several times to wait for the answer. Zane also states that there were some technical difficulties and that some of the expert's answers were unintelligible and that the video screen temporarily went blank. None of these issues show that Zane's substantial rights were affected. Chelsea's counsel did not appear to have any difficulty waiting for the answers before asking another question. The difficulty that Zane's attorney had in dealing with the technology and the few apparent technical glitches do not show an adverse affect on Zane's substantial rights. The few unintelligible answers likewise do not do so. The expert's testimony was being recorded, and even the answers of witnesses who testify in person are sometimes unintelligible, especially with audio recordings which are standard in magistrate court. Zane has failed to show that his substantial rights were affected by the court's decision to permit the expert to testify via Skype.

## IV.
### Did the Magistrate Court Err in Denying Zane's Motion to Strike the Testimony of Chelsea's Expert?

After Chelsea's expert had completed her testimony and was excused, Zane moved to strike her entire testimony. The basis of the motion was: "I asked her if she was familiar with the standard used to determine custody in Idaho. She said 'No.' And so, Your Honor, on that basis, we would move to strike her testimony in its entirety."

5

The magistrate court correctly denied the motion. The witness did not testify as an expert on Idaho law. She testified regarding her opinion as to the best interests of the children. The court knew Idaho law. It could consider the expert's testimony, give it and the other evidence the weight the court deemed it was entitled, and then apply the facts and expert opinions to the law to reach its decision.

Zane also raises other criticisms of the expert's testimony based upon answers elicited during cross-examination. Those criticisms need not be addressed because they were not the basis of his motion to strike the expert's testimony.

## V.
## Did the Magistrate Court Abuse Its Discretion in Permitting Chelsea to Move to Montana with the Twins?

"Child custody determinations made by a magistrate court are reviewed by this Court under an abuse of discretion standard." *Peterson*, 153 Idaho at 320, 281 P.3d at 1098. The magistrate court commenced its analysis of whether Chelsea should be permitted to take the twins with her to Montana by quoting from *Roberts v. Roberts*, 138 Idaho 401, 64 P.3d 327 (2003), as follows, "[I]n Idaho, the moving parent has the burden of proving relocation would be in the best interests of the child before moving in violation of a previous custody arrangement." *Id.* at 405, 64 P.3d at 331. The court then addressed the factors listed in Idaho Code section 32-717(1), which are:

(a) The wishes of the child's parent or parents as to his or her custody;
(b) The wishes of the child as to his or her custodian;
(c) The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
(d) The child's adjustment to his or her home, school, and community;
(e) The character and circumstances of all individuals involved;
(f) The need to promote continuity and stability in the life of the child; and
(g) Domestic violence as defined in section 39-6303, Idaho Code, whether or not in the presence of the child.

The court found that the factors in favor of permitting Chelsea to relocate the twins to Montana were as follows:

- The wishes of the mother as identified in Finding 29 ["The Plaintiff wishes for continued primary physical custody with her in Havre Montana."].

6

- The wishes of the children are neutral as identified in Finding 31 ["They are smart, articulate, and they love both their mom and their dad. They did not wish to say anything bad about either parent."].
- The interaction or relationship of the children with the mother as opposed to the father as she has been identified as the primary caregiver. Furthermore, her parenting skills have been lauded by the various witnesses. This is not to denigrate the relationship the children have with the father.
- The character and circumstances of all individuals involved is essentially neutral. Both are stable and can provide an adequate home for the children to meet their physical needs. Both parents have been involved in extracurricular activities and the children have bonded to their parents. The girls have daily interaction with their two brothers from the marriage of Plaintiff and Daniel Sorensen. The children have been substantially involved in their brother's lives.
- In considering the quality of the schooling available to the children in Bingham County, the Court can find that their needs have been met. There also appears to be as many opportunities for electives, sports, and extracurricular activities in the Havre School system. The children have made a good adjustment to their school in Havre. This is evidenced by finding 33 ["They are doing well as evidenced by their report cards, their certificates of excellence, and according to testimony heard by the court."]. The home situation is stable in Havre with the school being within walking distance from home. The Plaintiff has elected to stay at home to care for her children.
- The need to promote continuity and stability in the life of the child argues for the physical custody to be with the Plaintiff, in that the children have been living with their mother since birth or more than ten years. They have seen their father every other weekend for the past six years.

The court found that the factors weighing against permitting the twins to move to Montana were:

- The Court finds and concludes that the need to promote continuity to the children argues for the primary physical custody to be with the Defendant/Blackfoot area. The children have been here all of their lives and the children have flourished in the Blackfoot area.
- The children have family and friends in the area. There are no immediate or extended family members in the Havre area.
- The wishes of the father that the children remain and continue to be raised in the Blackfoot area.

The factors listed in Idaho Code section 32-717 are neither mandatory nor exclusive. *Lamont v. Lamont*, 158 Idaho 353, 359–60, 347 P.3d 645, 651–52 (2015). The magistrate court also considered that Daniel's job was the reason for the move to Montana and that his income would permit Chelsea to be a stay-at-home mother. Improved economic well-being as a result of

7

a move is a factor that can be considered by the court. *Id.* at 358, 347 P.3d at 650. Zane does not challenge the court's consideration of that factor.

However, the court wrote: "The Court has also considered the ages of the children. As they enter their pre-teen years, the issues of maturation are important. Having a stay at home mother is an important consideration for the court." Zane contends that this constituted the court erroneously applying the tender years doctrine, which held "that custody of a child of tender years should be vested in the mother." *Moye v. Moye*, 102 Idaho 170, 172, 627 P.2d 799, 801 (1981). "To the extent previous case law exists which suggests a preference for the mother as custodian of a child of tender years, the preference exists only when all other considerations are equal." *Id*.

Although Zane admits that the magistrate court did not explicitly apply the tender years doctrine, he contends that the court's reference to "stay at home mother" and "the issues of maturation" show that it considered that doctrine. The court's statement appears to have placed emphasis on the fact that Chelsea would not be working but would be staying at home with the twins, not that the mother should have custody of them because of their age. In *Peterson*, we affirmed a magistrate court's decision allowing a mother to move to Utah with the minor children where one of the factors relied upon by the court was that the move would allow her "to 'essentially be a stay-at-home mother with the children, while earning income in her home, by performing secretarial services for her brother.'" 153 Idaho at 324, 281 P.3d at 1102. The magistrate court in this case did not err in considering as a factor that the move to Montana would permit Chelsea to be a stay-at-home parent for the children.

Zane contends that the factors considered by the magistrate court should have been weighed in his favor. In making a child custody determination, the court had wide discretion in weighing the factors set forth in Idaho Code section 32-717 and other relevant factors. *King v. King*, 137 Idaho 438, 444, 50 P.3d 453, 459 (2002). This Court reviews the magistrate court's custody decision by asking whether it: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) reached its decision by an exercise of reason." *Hoskinson v. Hoskinson*, 139 Idaho 448, 454, 80 P.3d 1049, 1055 (2003). Zane has failed to show that the court abused its discretion.

## VI.
## Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Zane seeks an award of attorney fees for the appeal if he is determined to be the prevailing party and this case is remanded to the magistrate court. He is not the prevailing party on appeal. Chelsea seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-121. We have held with respect to section 12-121 that "[i]n normal circumstances, attorney fees will only be awarded when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Based upon that standard, we decline to award Chelsea attorney fees on appeal.

## VII.
## Conclusion.

We affirm the amended judgment of the magistrate court, and we award Respondent costs, but not attorney fees, on appeal.

Chief Justice J. JONES and Justices BURDICK, W. JONES and HORTON **CONCUR.**