**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 49072**

| | | |
|---|---|---|
| MARK ADAM WEAVER, | ) | |
| | ) | |
| Petitioner-Respondent, | ) | December, 2021 Term |
| | ) | |
| v. | ) | Opinion filed: April 5, 2022 |
| | ) | |
| LISA KAYE WEAVER, | ) | Melanie Gagnepain, Clerk |
| nka LISA KAYE KIDMAN, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Court of the Seventh Judicial District of the State of Idaho, Bingham County. Scott H. Hansen, Magistrate Judge.

The magistrate court's decision is <u>reversed</u> and <u>remanded</u> for further proceedings.

Banks Gaffney, PLLC, Idaho Falls, for Appellant. Laurie Gaffney argued.

Smith Woolf Anderson & Wilkinson, PLLC, Idaho Falls, for Respondent. Marty Anderson argued.

_____

ZAHN, Justice.

This is a permissive appeal of a custody determination concerning whether a magistrate court abused its discretion in awarding custody to one parent nearly every weekend. For the reasons discussed below, we reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this matter are undisputed. Lisa Weaver and Mark Weaver married on March 23, 2016.[1] The parties have one minor child, A.W., born January 1, 2017. On November 25, 2020, Mark filed for divorce. Lisa responded on December 23, 2020, and filed an amended response and counterclaim on February 11, 2021.

Neither party filed for temporary orders during the case. The parties agreed between themselves to split physical custody of A.W. on a roughly 60/40 basis, with Mark having three out

_____

[1] As the parties share the same last name, we will refer to them using their first names.

1

of every four weekends. The record indicates that Lisa also allowed Mark additional custodial time at his request.

Mark's official work schedule is Monday through Friday from 8:00 a.m. to 5:00 p.m. However, Mark's supervisor allows him flexibility to arrive at work later on Monday mornings when he is caring for A.W., so long as he makes up those hours during the week. Lisa works approximately twenty to twenty-five hours per week from home and has "complete flexibility" to tailor her hours to suit A.W.'s schedule. She anticipates that she may work up to thirty hours per week in the future.

At the time of trial, A.W. attended preschool for two hours per day, two days a week on Tuesdays and Thursdays. The parties expect A.W. will begin kindergarten in the fall of 2022, but have yet to decide whether A.W. will be homeschooled, attend public school, or attend private school.

Through court-ordered mediation, the parties resolved all issues relating to their divorce except for "physical custody, visitation, and child support." The magistrate court held a one-day bench trial regarding those issues on May 14, 2021.

Pertinent to this appeal, Mark requested 50/50 custody, proposing a one week on/one week off schedule with exchanges on Fridays. Under Mark's proposal, A.W. would go to daycare on weekdays while he worked. Despite the time A.W. would need to spend at daycare, Mark argued the 50/50 split would be in A.W.'s best interest because it would allow A.W. to have more time with her father and give her more "stability and structure" compared to the temporary custody arrangements the parties had been using.

Lisa, in contrast, requested custody of A.W. on weekdays as well as one weekend out of every three. She also stated, however, that she would be fine to keep the parties' pretrial custody arrangement—with Lisa having one out of every four weekends with A.W.—if she had more weekend time with A.W. during the summer. Lisa's major concern with Mark's proposed custody arrangement was the time it would require A.W. to be in daycare when Lisa could provide care for A.W. at home.

The magistrate court issued an oral ruling at the conclusion of trial that split physical custody of A.W. between the parties on a roughly 60/40 basis. Specifically, the magistrate court gave Mark custody beginning Thursday at 6:00 p.m. until Sunday at 6:00 p.m. Lisa received custody for the rest of the time, from Sunday at 6:00 p.m. until Thursday at 6:00 p.m. Additionally,

2

the magistrate court provided that each parent would have two, one-week uninterrupted blocks in the summer to spend with A.W. Finally, the magistrate court adopted a holiday schedule giving Mark and Lisa alternating holiday visitation over spring break, Easter, Independence Day, Thanksgiving, and Christmas. The magistrate court's order did not award Lisa any weekend custody aside from weekends that occurred during Lisa's one-week blocks during the summer or holidays that may fall on a weekend.

In its oral ruling, the magistrate court discussed its preference that the time A.W. spent in daycare should be minimized, while the time A.W. spent with each parent should be maximized. Further, it noted the benefits the schedule would have for A.W. as she transitioned into kindergarten, because A.W. would generally travel to school from Lisa's house. The magistrate court explained that Lisa, who was awarded the final say over where A.W. would attend school, "kind of gets to be the school parent to get [A.W.] into school, get her to school, she can go to school from the same place, and I think that'll ultimately help with [A.W.'s] stability." Finally, the magistrate court indicated that its decision did not give either Lisa or Mark exactly what they wanted but was what the magistrate court believed to be in A.W.'s best interest.

Lisa moved the magistrate court for permission to appeal its custody order directly to this Court pursuant to I.A.R. 12.1, which the magistrate court granted. Lisa timely appealed.

## II.    ISSUES ON APPEAL

1. Did the magistrate court abuse its discretion in ordering a division of custody in which one parent has custody on almost every weekend?
2. Is Mark entitled to an award of attorney fees on appeal?

## III.    STANDARD OF REVIEW

For a permissive appeal of a custody issue under Idaho Appellate Rule 12.1, this Court's standard of review is as follows:

> [T]he Court reviews the magistrate judge's decision without the benefit of a district court appellate decision. *Roberts v. Roberts*, 138 Idaho 401, 403, 64 P.3d 327, 329 (2003). A trial court's child custody decision will not be overturned absent an abuse of discretion. *Id.* A trial court does not abuse its discretion as long as the court "[1] recognizes the issue as one of discretion, [2] acts within the outer limits of its discretion . . . [3] [acts] consistently with the legal standards applicable to the available choices, and [4] reaches its decision through an exercise of reason." *Id.* When the trial court's decisions affect children, the best interests of the child is the primary consideration. *Id.* at 403–04, 64 P.3d at 329–30.

3

*Lamont v. Lamont*, 158 Idaho 353, 356, 347 P.3d 645, 648 (2015). A magistrate court's decision will be affirmed if supported by substantial and competent evidence, even where conflicting evidence has been presented. *Boe v. Boe*, 163 Idaho 922, 929, 422 P.3d 1128, 1135 (2018).

## IV.    ANALYSIS

**A.  The magistrate court abused its discretion in awarding Mark physical custody of A.W. on almost every weekend.**

Lisa argues the magistrate court abused its discretion in two respects. First, she contends the magistrate court improperly focused on achieving an equal division of time between the parents. Second, she argues the magistrate court's order did not serve the best interest of A.W. because it created an unfair "fun parent"/ "responsible parent" dichotomy.

Mark, in response, contends that the magistrate court properly considered all the factors under Idaho Code section 32-717 and properly exercised its discretion in reaching its custody decision. Further, he argues the magistrate court did not improperly focus on equal custodial time between the parents because it awarded Lisa fifty-seven percent of the custodial time. Finally, Mark contends the magistrate court's order did not pigeonhole Lisa into being the "responsible parent" and Mark the "fun parent" because the custody award gave Lisa weekend time on holidays and during two weeks in the summer. He also asserts that the unique circumstances of Lisa's employment gave her the flexibility to spend fun or quality time with A.W. even if those days fell on a weekday.

"In Idaho, the child's best interest is of paramount importance in child custody decisions." *Bartosz v. Jones*, 146 Idaho 449, 454, 197 P.3d 310, 315 (2008) (citing *Hoskinson v. Hoskinson*, 139 Idaho 448, 455, 80 P.3d 1049, 1056 (2003)). Idaho Code section 32-717 provides that a trial court reaching a custody decision "shall consider all relevant factors" including, but not limited to:

(a) The wishes of the child's parent or parents as to his or her custody;

(b) The wishes of the child as to his or her custodian;

(c) The interaction and interrelationship of the child with his or her parents, and his or her siblings;

(d) The child's adjustment to his or her home, school, and community;

(e) The character and circumstances of all individuals involved;

(f) The need to promote continuity and stability in the life of the child; and

(g) Domestic violence . . . whether or not in the presence of the child

4

I.C. § 32-717(1). "The factors listed in Idaho Code section 32-717 are neither mandatory nor exclusive." *Reed v. Reed*, 160 Idaho 772, 777, 379 P.3d 1042, 1047 (2016). "The trial judge has wide discretion when weighing these and other relevant factors," *King v. King*, 137 Idaho 438, 444, 50 P.3d 453, 459 (2002) (citation omitted). Given the statute's directive that the trial court "shall consider all relevant factors," a trial court abuses its discretion if it fails to give appropriate consideration to relevant factors. *Martinez (Portillo) v. Carrasco (Mendoza)*, 162 Idaho 336, 345, 396 P.3d 1218, 1227 (2017) (abuse of discretion to fail to consider relevant factor that custody order would require parents to make a 913 mile one-way trip every three weeks). Pertinent here, a parent's work schedule and the necessity for third-party childcare can be relevant factors to consider in determining a custody award if they affect the well-being of a child. *Silva v. Silva*, 142 Idaho 900, 906, 136 P.3d 371, 377 (Ct. App. 2006).

Additionally, unless a parent is a habitual perpetrator of domestic violence, there is a presumption that joint custody is in the best interests of a child. *Lamont*, 158 Idaho at 360, 347 P.3d at 652 (quoting *Bartosz*, 146 Idaho at 456, 197 P.3d at 317); I.C. § 32-717B(4)–(5). "[J]oint physical custody does not mean that each parent is entitled to receive an equal amount of time with the children[.]" *Peterson v. Peterson*, 153 Idaho 318, 321, 281 P.3d 1096, 1099 (2012). Rather, an order awarding joint physical custody should afford "each of the parents significant periods of time in which a child resides with or is under the care and supervision of each of the parents." I.C. § 32-717B(2).

We review the magistrate court's custody decision under an abuse of direction standard, asking whether "the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (internal citation omitted).

In reaching its custody decision, the magistrate court emphasized two factors—(1) the parents' wishes and (2) the need for continuity and stability in the child's life. The magistrate court recognized that Mark wanted a 50/50 split while Lisa wanted Mark to have custody two out of every three weekends with Lisa having the rest of the time. The magistrate court indicated that it was "real tempted to do the fifty-fifty custody" but determined that the prospect of A.W. spending every other week in daycare would not be in her best interest. However, it did recognize that "there

5

doesn't seem to be any good reason why Dad shouldn't have quite a bit of time with [A.W.]" It also recognized Lisa's wish to have weekend time with A.W. but noted that its decision was "focus[ed] . . . not on what's best for Mom or what's best for Dad but what's best for the child." Yet, it placed weight on Lisa's position that A.W.'s time in daycare should be minimized, especially when Lisa had the flexibility to provide care for A.W. during the day. The magistrate court maintained that its custody order would serve the stability and continuity of A.W.'s life because it would facilitate her transition to school and maximize the time she could spend with both parents. It also noted that stability and continuity was a "really . . . important" factor in its analysis.

The magistrate court found the other statutory factors to be essentially neutral. Specifically, it noted that A.W.'s young age prevented her from articulating her wishes about the custody arrangement, but that she loved both parents and desired a good relationship with each. Similarly, concerning the character and fitness of the individuals involved, the magistrate court concluded that Lisa and Mark were both good parents without criminal records, mental health issues, adverse personality traits, or drug and alcohol problems. Regarding A.W.'s adjustment to home, school, and community, the magistrate court noted that A.W. was not yet old enough to enter school, but indicated that both parents understood the social benefits of preschool and that A.W. would soon begin kindergarten. The magistrate court found that domestic violence was not an issue in the parties' relationship. Finally, as to A.W.'s interaction and relationship with her parents, the magistrate court determined that both parents interacted well with A.W. and had a good relationship with her.

In addition to the statutory factors, the magistrate court also considered the possibility that the parties may allow each other visitation during their respective custodial times, especially on Fridays when Mark may be working, and Lisa is available to care for A.W.

Applying the *Lunneborg* factors to this case, the magistrate court recognized that determination of a custody schedule was discretionary, stating it was "called upon to exercise its discretion to try to figure out what will ultimately be in the best interest of the child." Further, the magistrate court reached its decision through the exercise of reason because it discussed each of the statutory factors and explained the reasons for its custody decision. However, for reasons discussed below we hold that the magistrate court did not act within the outer boundaries of its discretion and acted inconsistently with applicable legal principles because it did not adequately

6

consider how its custody order would affect A.W.'s interaction and interrelationship with her parents. The magistrate court's order would not further A.W.'s best interests once she started kindergarten because it would dramatically reduce the amount of unstructured quality or "free" time she had with Lisa.

As the magistrate court's order relates to custody while A.W. is in preschool, we agree that the magistrate court's order satisfied the *Lunneborg* factors. The magistrate court carefully weighed each factor and reached a reasonable conclusion that provided both Lisa and Mark with significant portions of custodial time while also limiting the amount of time A.W. had to spend in third-party care. Because of Lisa's flexible, part-time work schedule, A.W. had unstructured quality time with each parent. A.W.'s quality time with Mark occurred on the weekends and her quality time with Lisa occurred during the week. A.W. only attended preschool for 2 hours per day on Tuesdays and Thursdays. A.W. did not attend preschool on Lisa's other days, and Lisa's schedule allowed her to structure her work time to have quality time with A.W. during those weekdays.

Yet, A.W.'s time in preschool was fleeting as she was slated to start kindergarten in the fall of 2022, only a little over a year after the magistrate court's oral ruling. The magistrate court failed to consider how its custody order would affect the interaction and interrelationship of A.W. and her parents and specifically how the order would dramatically reduce the amount of unstructured quality time A.W. would have with her mother after A.W. started school. Instead, the magistrate court focused on its belief that allowing Lisa to be the "school parent" would provide A.W. stability:

> And the benefit of this schedule that I see for schooling purposes is, I think it's a challenge for a child to have to go back and forth between different parents and to go to school from different households because things are a little different, but a lot of kids do it and they adapt very well and they do very well.
>
> But the thing I like about this plan is, is that when it's time for [A.W.] to go to school, I think Mom will be in a position to say, "I live in Idaho Falls. I'm going to have her go to kindergarten at the school that's two blocks away. I can get her there easily. I can get her home." I think there's a big benefit to [A.W.] in having that kind of stability and have her going Monday[2] night, when she's getting ready to go to school Monday morning, she's at home with Mom, she goes to school.
>
> . . . .

---

[2] The context of this discussion suggests the magistrate court's reference to Monday was a misstatement. We suspect he intended to say "Sunday" instead of "Monday."

7

But the benefit of what I have done here that I see is, is that Mom kind of gets to be the school parent to get her into school, get her to school, she can go to school from the same place, and I think that'll ultimately help with [A.W.'s] stability.

With respect to A.W.'s interaction and interrelationship with her parents, the magistrate court merely noted that A.W. interacted well with both Mark and Lisa and shared a good relationship with both. The best interests of the child analysis requires more than a bare recitation of the current state of the parents' and child's relationship. Rather, it requires meaningful analysis regarding how the custody schedule ordered would affect that relationship moving forward. Under the unique circumstances of this case, the magistrate court did not adequately consider how the custody order would significantly reduce A.W.'s quality time with her mother and deprive her father of the opportunity to interact with her on school days and how those lost opportunities would impact A.W.'s interactions and interrelationship with her parents.

There are several reasons why the custody arrangement would no longer be in A.W.'s best interests after she started school. After A.W. starts school, the custody schedule essentially means Lisa cannot plan any weekend activities with A.W., such as trips to the park, visits with Lisa's friends and family, or other weekend trips. Lisa could request permission from Mark to plan such activities, but if Mark declined to allow them Lisa would have no recourse other than to wait for her one week visits during the summer or a holiday that included a weekend. The magistrate court's indication that Lisa would be the "school parent," meant Lisa would be responsible for getting A.W. up in the morning, taking her to school, bringing her home from school, ensuring she did any homework, and making sure she got to bed early because every night with Lisa would be a "school night." All this would take away from Lisa's unstructured quality time with A.W. The order would be equally harmful to Mark's interactions and relationship with A.W., depriving him of important time to guide A.W. through the various milestones and challenges of school. Moreover, the magistrate court recognized that if A.W. went to school in Idaho Falls, she would attend school five days per week, meaning A.W. would go to school four days a week from Lisa's home and one day a week from Mark's. This school schedule seems no less disruptive than the one week on/one week off schedule the magistrate court rejected because of the perceived challenges with "hav[ing] to go back and forth between different parents and to go to school from different households because things are a little different."

8

The transcript of the custody hearing indicates the magistrate viewed "[t]he interaction and interrelationship of the child with his or her parents" factor only in terms of the *state* of A.W.'s interactions and interrelationship with her parents, rather than the *nature and quality* of the interactions and interrelationship moving forward. Custody orders are forward-looking, defining the future relationship between the parties. Parents interact differently with their children in different circumstances.

When it comes to school, parents may need to encourage, remind, or even cajole their children into getting up, getting ready, getting out the door and then later getting their homework done. This can put a parent in a more serious, less fun role. Parents can take different approaches to encouraging children to be responsible, care for themselves, and meet school obligations. It's important for children to learn how each parent handles these situations.

On weekends, however, when there is no school, parents can plan or even encourage children to sleep in, stay in their pajamas, not leave the house and watch movies all day, or do other fun activities at home. This allows parents to play a fun role with their children and have precious interactions that would not occur during the school week. These different types of interactions are important to developing and strengthening parent-child relationships and can create some of the most enduring memories in a child's life. Our sister states have also recognized the importance of allowing a child quality time with each parent. *See In re Marriage of Kessler*, 441 N.E.2d 1221, 1227 (Ill. App. Ct. 1982) (affirming modification of a custody arrangement that gave all the weekends to one parent and stating the schedule "prevent[ed] a balanced relationship, or recreation time, with the[] mother and new family unit"); *Nikolic v. Ingrassia*, 850 N.Y.S.2d 539, 541 (App. Div. 2008) (reversing a child custody order that "award[ed] every weekend, holiday, and summer vacation to the mother," because the order "fail[ed] to take into account the importance of the child's relationship with the father and his extended family by depriving the child of contact during times usually reserved for family gatherings and recreation"); *DuBois v. DuBois*, 714 So.2d 308, 310 (Ala. Civ. App. 1998) (holding that a trial court abused its discretion in ordering a custody spilt that gave husband custody every weekend because the schedule "would not permit the children to spend any quality time with their mother"); *McCrery v. McCrery*, 138 N.W.2d 876, 878 (Iowa 1965) (modifying a custody order that gave the mother custody every weekend because it "would give the father little free time to spend with his child and restrict [the child's] opportunity for other social contacts").

9

It is in A.W.'s best interests to interact with each of her parents playing each of these roles. We hold the magistrate court abused its discretion because it acted outside the bounds of its discretion and misapplied relevant legal standards in failing to adequately consider the statutory factor concerning A.W.'s interactions and interrelationships with her parents once A.W. started school.

We do not hold, nor are we implying, that the magistrate court should have adopted either parents' requested custody schedule. To be fair, the magistrate court's custody decision appeared to be influenced by a desire to balance the parents' competing requests. The best interests of the child standard grants a magistrate court discretion to reach a custody decision that serves the best interests of a child no matter what the parents have specifically requested. *See McGriff v. McGriff*, 140 Idaho 642, 646–47, 99 P.3d 111, 115–16 (2004) ("We have held that a court is not confined by the allegations of the petition to modify in seeking out what custody arrangement would be in the best interest of the child."). While the parents' requests are one factor in that analysis, and continuity and stability are another, we hold the magistrate court abused its discretion because it failed to adequately consider another statutory factor, namely the interactions and interrelationship between A.W. and her parents. Accordingly, we reverse the magistrate court's decision and remand the matter for a new custody determination consistent with this opinion.

## B. Mark is not entitled to attorney fees on appeal.

Lisa has not requested fees on appeal. Mark has requested attorney fees on appeal pursuant to Idaho Code section 12-121 and I.A.R. 41. He argues that Lisa's appeal is frivolous, unreasonable, and without foundation because she has merely asked this Court to second-guess the conclusions reached by the magistrate court.

Idaho Code section 12-121 permits an award of attorney fees to the prevailing party if "the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. In order to recover attorney fees under 12-121, a party must first prevail on the merits. *Id.* Accordingly, we decline Mark's request for attorney fees on appeal because he is not the prevailing party as Lisa has prevailed on the sole issue on appeal.

## V.    CONCLUSION

For the foregoing reasons, we reverse the magistrate court's custody decision and remand for further proceedings. The magistrate court abused its discretion because it did not adequately consider the best interests of the child factors given the situation once A.W. would start school.

We decline to award Mark attorney fees on appeal because he is not the prevailing party. Costs on appeal are awarded to Lisa pursuant to I.A.R. 40.

Chief Justice BEVAN and Justices BRODY, STEGNER, and MOELLER **CONCUR.**